JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
(1) Impala Platinum Holdings, Limited
2 Fricker Road, Illova 2196, Johannesburg, South Africa
(SEE ATTACHMENT FOR PLAINTIFF #2)

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Richard L. Bazelon, Esquire - PA Bar No. 02505 - (215) 568-1155
Bazelon, Less & Feldman, P.C., One South Broad St., Suite 1500
Philadelphia, PA 19102 (SEE ATTACHMENT FOR ATTORNEYS)

## DEFENDANTS
A-1 Specialized Services and Supplies, Inc.
2707 State Road, Croyden, PA 19021
(SEE ATTACHMENT FOR DEFENDANTS #2 - #5)

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government Plaintiff
☐ 2  U.S. Government Defendant
☐ 3  Federal Question *(U.S. Government Not a Party)*
☒ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 367 Health Care/ | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability / Product Liability | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine / ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| | ☐ 350 Motor Vehicle / **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability / ☒ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury / ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice / ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 195 Contract Product Liability | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 196 Franchise | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| | | ☐ 791 Employee Retirement Income Security Act | | ☐ 895 Freedom of Information Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights / **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 220 Foreclosure | ☐ 441 Voting / ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment / ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations / ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other / **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education / ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | ☐ 550 Civil Rights | | | |
| | ☐ 555 Prison Condition | | | |
| | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another District *(specify)*
☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. Section 1332
Brief description of cause:
Fraudulent transfer and breach of fiduciary duty

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ Yes  ☒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions)*
JUDGE  Baylson
DOCKET NUMBER  2:13-CV-02930

DATE  03/23/2016

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

**ATTACHMENT TO CIVIL COVER SHEET**

I. (a) Plaintiff No. 2:

Impala Refining Services Limited
2 Fricker Road, Illovo 2196
Johannesburg, South Africa

I. (c) Attorneys:

Lisa A. Barton, Esquire – PA Bar No. 78139
Bazelon Less & Feldman, P.C.
One South Broad Street
Suite 1500
Philadelphia, PA 19107
(215) 568-1155

Michael Harris, Esquire – PA Bar No. 56948
Bazelon Less & Feldman, P.C.
One South Broad Street
Suite 1500
Philadelphia, PA 19107
(215) 568-1155

Defendants No. 2-5

Suresh Khosla
40 Landing Court
Moorestown, New Jersey 08057

Ashok Kumar Khosla
44 Landing Court
Moorestown, New Jersey 08057

Om K. Khosla
5 Cobblestone Court
Moorestown, New Jersey 08057

Leena Khosla
40 Landing Court
Moorestown, New Jersey 08057

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Impala Platinum Holdings, Ltd., et al. | : | CIVIL ACTION |
| v. | : | |
| A-1 Specialized Services and Supplies, Inc. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
     and Human Services denying plaintiff Social Security Benefits.                                ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
     exposure to asbestos.                                                                        ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
     commonly referred to as complex and that need special or intense management by
     the court.  (See reverse side of this form for a detailed explanation of special
     management cases.)                                                                          ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.            [✓]

| | | |
|---|---|---|
| March 23, 2016 | _(signature)_ | Plaintiff |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-568-1155 | 215-568-9319 | rbazelon@bazless.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

### UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: Impala Platinum Holdings Ltd., 2 Fricker Road, Illovo 2196, Johannesburg, South Africa

Address of Defendant: A-1 Sepcialized Serv. & Supplies, Inc., 2707 State Rd, Croyden, PA 19021

Place of Accident, Incident or Transaction: Croydon, Pennsylvania

*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))  Yes ☑  No ☐

Does this case involve multidistrict litigation possibilities?  Yes ☐  No ☑

*RELATED CASE, IF ANY:*

Case Number: 2:13-CV-02510-MMB  Judge Baylson  Date Terminated: _____
2:13-CV-02930-MMB

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
Yes ☑  No ☐

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
Yes ☑  No ☐

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
Yes ☐  No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
Yes ☐  No ☑

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
(Please specify) _____

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☑ All other Diversity Cases
(Please specify) Fradulent transfer

### ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I, Richard L. Bazelon , counsel of record do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE: 03/23/2016 _____ 02505
Attorney-at-Law                Attorney I.D.#

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 03/23/2016 _____ 02505
Attorney-at-Law                Attorney I.D.#

CIV. 609 (5/2012)

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IMPALA PLATINUM HOLDINGS LIMITED,   :
2 Fricker Road, Illovo 2196,   :
Johannesburg, South Africa,   :
    and   :
IMPALA REFINING SERVICES LIMITED,   :
2 Fricker Road, Illovo 2196,   :  No. _____
Johannesburg, South Africa,   :
                  :
         Plaintiffs,   :
                  :
      v.   :
                  :
A-1 SPECIALIZED SERVICES   :
& SUPPLIES, INC.,   :
2707 State Road,   :
Croydon, Pennsylvania,   :
SURESH K. KHOSLA,   :
40 Landing Court,   :
Moorestown, New Jersey,   :
ASHOK KUMAR KHOSLA,   :
44 Landing Court,   :
Moorestown, New Jersey,   :
OM K. KHOSLA,   :
5 Cobblestone Court,   :
Moorestown, New Jersey   :
    and   :
LEENA KHOSLA,   :
40 Landing Court,   :
Moorestown, New Jersey   :
 ,          Defendants.

## COMPLAINT

Plaintiffs Impala Platinum Holdings Ltd. ("Implats") and Impala Refining Services Ltd., ("Impala Refining") (collectively, "the Implats Companies"), through their undersigned counsel, Bazelon Less & Feldman, P.C., file this Complaint against defendants A-1 Specialized Services and Supplies, Inc. ("A-1"), Suresh K. Khosla ("Suresh"), Ashok Kumar Khosla ("Kumar"), Om K. Khosla ("Om"), and Leena Khosla ("Leena"), and in support thereof aver as follows:

## NATURE OF THE ACTION

1.     This action involves claims for fraudulent transfer and breach of fiduciary duty, which are brought by two companies incorporated and doing business in South Africa, against a closely-held Pennsylvania corporation and its four officers, directors and shareholders.

2.     Plaintiffs Implats and Impala Refining, and defendant A-1, are in the business of, amongst other things, extracting valuable platinum group metals from spent automotive catalytic converters.  They have had a long business relationship in the course of which plaintiffs, Implats and Impala Refining, extended to the defendant A-1 advances and loans totaling in excess of $179 million.

3.     During its long business relationship with Implats and Impala Refining, A-1 continually failed and refused to make payments on its obligations in accordance with the terms of the parties' agreements, and A-1 repeatedly informed Implats and Impala Refining that it had no intention of honoring its obligations under the parties' agreements and that it had no financial means to do so.

4.     In May 2013, the Implats Companies filed an action in this court against A-1, captioned *Impala Platinum Holdings Limited et al. v. A-1 Specialized Services and Supplies, Inc.*, Docket No.13-CV-2930 ("the Implats Contract Action").  In August 2013, the Implats Companies filed an Amended Complaint in the Implats Contract Action that added defendants Suresh Khosla and Slogam Limited Partnership, and added tort claims, including claims based on Suresh Khosla's transferring A-1's funds to Slogam.  By the terms of a Consent Order entered on January 9, 2014, the Court in the Implats Contract Action referred the parties to mediation, and if the mediation was unsuccessful, referred the Implats Companies and A-1 to binding arbitration before the London Court of International Arbitration ("LCIA"), of the claims in that case arising out of the business relationship between them.

2

5.      In December 2015 the London Court of International Arbitration ("LCIA") issued a Final Arbitration Award in favor of Implats and Impala Refining, and against A-1, in the amount of $189,668.037.20, plus pre-award interest of $9,699,000, post-award interest of $10,392.77 per day, and arbitration costs of $172,229.  The Implats Companies have moved to confirm the Final Arbitration Award in the Implats Contract Action.

6.      While the Implats Contract Action has been pending, from pleadings and documents filed in three separate cases in which A-1 is a defendant or counterclaim defendant, the Implats Companies have learned that:

a.      during the time period when A-1 was failing and refusing to honor its payment obligations to Implats and Impala Refining, A-1 made large shareholder distributions to its shareholders Suresh, Kumar, Om, and Leena; continued to pay salaries to shareholders Kumar and Om at a time when they were no longer working for A-1; and transferred significant sums of money out of A-1 and into other companies owned by A-1's shareholders, including Slogam;

b.      during the same time period, A-1 transferred $15 million of A-1's funds to Sudhir Chopra (a relative of the Khosla brothers), to allow Kumar to purchase Chopra's interest in Alliance Industries Limited ("Alliance"), in a transaction for which A-1 received no value in exchange;

c.      in early 2013, shortly after Implats and Impala Refining commenced proceedings against A-1 based on A-1's breach and anticipatory breach, A-1 shareholder Om filed a claim against A-1 in Bucks County, Pennsylvania; A-1 shareholder Kumar filed a claim against A-1 in Burlington County, New Jersey; and Alliance, a company owned and controlled solely by Kumar as a result of the $15 million paid by A-1, sued A-1 in the Eastern District of Pennsylvania; and

3

      d.      in late May 2015, five weeks before the LCIA arbitration hearing between Impala and A-1, A-1 suddenly agreed to settle Om's lawsuit in Bucks County, and in early September 2015, A-1 also abruptly agreed to settle Kumar's claims in Burlington County, and to settle Alliance's lawsuit in this court.  Shortly thereafter, A-1 entered into confidential settlement agreements with its shareholders Suresh, Kumar, Om, and Leena, and with Kumar's company Alliance, which relieved or reduced Suresh and Kumar's obligations to A-1, and which required A-1 to make large payments from its assets, and to give its insiders and related parties priority security interests in its assets in an aggregate amount of $46.7 million, an amount that on information and belief equals or exceeds A-1's current assets.

7.      Accordingly, the relief sought by Implats and Impala Refining[1] includes:

      a.      Judgment in plaintiffs' favor, and against Suresh, Kumar, Om, and Leena, in an amount equal to the lesser of (i) the value of the assets transferred to them from A-1 with the intent to hinder, delay or defraud A-1's creditors, including plaintiffs, or (ii) the amount of the Final Arbitration Award;

      b.      Judgment in plaintiffs' favor, and against Suresh, Kumar, Om, and Leena, in an amount equal to the lesser of (i) the value of the assets transferred to them from A-1 for which A-1 did not receive a reasonably equivalent value in exchange, during a time when A-1 was engaged in transactions for which its assets were unreasonably small, or (ii) the amount of the Final Arbitration Award;

---

[1] On March 21, 2016, the Implats Companies moved for leave to amend the Amended Complaint in the Implats Contract Action to add as defendants in that action Ashok Kumar Khosla, Om K. Khosla, and Leena Khosla, and to assert additional facts regarding events that occurred and information that was disclosed to the Implats Companies since the Amended Complaint was filed in August 2013.  The Implats Companies are commencing this separate action and filing this Complaint to preserve their claims under the applicable statutes of limitation.  Plaintiffs anticipate that both cases will proceed in an efficient manner as agreed by the parties or ordered by the Court.

    c.      Requiring Suresh, Kumar, Om, and Leena to account for and restore to A-1 all of the assets of A-1 that were transferred to them or to entities controlled by them at a time when A-1 was insolvent, in violation of their fiduciary duties to A-1's creditors, and requiring that all of the assets of A-1 so accounted for and restored to A-1 be applied to the payment of amounts owed to A-1's legitimate creditors, including plaintiffs;

    d.      Judgment in plaintiffs' favor against Suresh, Kumar, Om, and Leena in the amount of the losses sustained by plaintiffs as a result of the breaches of their fiduciary duties to the plaintiffs;

    e.      An award of punitive damages against Suresh, Kumar, Om and Leena for conduct that was outrageous, willful, and recklessly indifferent to the rights of A-1's creditors, including the Implats Companies, in fraudulently transferring all of the assets of A-1 to themselves and breaching their fiduciary duties to A-1's creditors.

    f.      An injunction prohibiting A-1 from transferring any additional money or property of A-1 to Suresh, Kumar, Om, Leena, or to any third parties, without receiving a reasonably equivalent value in exchange;

    g.      Imposition of a constructive trust in plaintiffs' favor on Kumar's ownership interest in Alliance in the amount equal to the amount of money wrongfully transferred from A-1 so that Kumar could purchase Chopra's shares of Alliance;

    h.      Appointment of a receiver for A-1; and

    i.      Such other relief as this Court may deem just.

## THE PARTIES

8.    Plaintiff Implats is a company incorporated under the laws of South Africa with a principal place of business at 2 Fricker Road, Illovo 2196, Johannesburg, South Africa.

5

9.     Plaintiff Impala Refining is a company incorporated under the laws of South Africa with a principal place of business at 2 Fricker Road, Illovo 2196, Johannesburg, South Africa.

10.     Defendant A-1 is a corporation organized under the laws of the Commonwealth of Pennsylvania with its principal place of business at 2707 State Road, Croydon, Pa. 19021.

11.     Defendant Suresh K. Khosla is an individual residing at 40 Landing Court, Moorestown, New Jersey.   On information and belief, Suresh is a Director and a 32% shareholder of A-1 and, with his wife Leena, more than one-third owner of A-1.   Suresh is also the President of Slogam's general partner, Slogam Enterprises, Inc.   From the time of its founding through June 2014, Suresh was the President and CEO of A-1.

12.     Defendant Ashok Kumar Khosla is an individual residing at 44 Landing Court, Moorestown, New Jersey.   Kumar is a 31% shareholder of A-1, and from the time of its founding until February 2016 was a Director of A-1.   From approximately May 2015 to February 2016, Kumar was the CEO or co-CEO of A-1, and the Chairman of A-1's Board of Directors.

13.     Defendant Om K. Khosla is an individual residing at 5 Cobblestone Court, Moorestown, New Jersey.   On information and belief, since the time A-1 was founded, Om has been a Director and a 32% shareholder of A-1.

14.     Defendant Leena Khosla is an individual residing at 40 Landing Court, Moorestown, New Jersey.   On information and belief, since the time A-1 was founded, Leena has been a Director and a 5% owner of A-1.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction over this action pursuant to the diversity statute, 28 U.S.C. § 1332(a)(2), which vests this Court with jurisdiction over actions between

citizens of a State and citizens of a foreign state.  The amount in controversy exceeds $75,000, exclusive of interest and costs.

16.     Venue lies in this Court pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events giving rise to this action took place in this district.

## FACTUAL BACKGROUND

**A.     A-1's Transfers Of Its Assets To Shareholders During The Time When A-1 Was Refusing To Honor Its Obligations To The Implats Companies**

17.     During the period when A-1 was failing and refusing to honor its financial obligations to the Implats Companies, A-1 and its shareholders Suresh, Kumar, Om and Leena approved the transfers and transferred millions of dollars of its assets to and otherwise for the sole benefit of A-1's shareholders Suresh, Kumar, Om and Leena, including, *inter alia*, the following payments:

a.     During the period from March 2010 through February 2012, while A-1 and the Implats Companies were entering into a series of agreements necessitated by A-1's growing indebtedness to Impala Refining, A-1 issued shareholder distributions to Suresh, Kumar, Om and Leena totaling $15,250,000;

b.     In 2012, at a time when A-1 could not satisfy its financial obligations to its creditors, including the Implats Companies, A-1 issued shareholder distributions totaling $4,249,500, including $1,360,000 to Suresh, $1,317,000 to Kumar, $1,360,000 to Om, and $212,500 to Leena;

c.     From July 2012 to July 2014, A-1 continued to pay Kumar a monthly salary of $20,000, even though Kumar was not working for A-1 during that time period;

d.     Since December 2013, A-1 continued to pay Om a monthly salary of $20,000, even though Om was no longer working for A-1;

7

e.     Starting in the fall of 2012, Suresh and A-1 transferred assets of A-1 to Slogam Limited Partnership, a company owned by Suresh, Kumar and Om, and between January and December of 2013, Suresh caused Slogam to issue $1 million in checks to Suresh;

f.     In 2012, A-1 paid $15 million of A-1's funds to Sudhir Chopra, so that Kumar could purchase Chopra's interest in Alliance, a transaction for which A-1 received no value in exchange.  This transfer resulted in Kumar gaining 100% ownership of Alliance with no investment of Kumar's own funds, after which Kumar authorized Alliance to sue A-1 for $70 million;

g.     On information and belief, since he became the sole owner of Alliance, Kumar has attempted to divert A-1's business opportunities to Alliance;

h.     On information and belief, Kumar and Suresh diverted A-1's funds to companies in England and India, at a time when A-1 did not have sufficient assets to pay its obligations to creditors, including the Implats Companies;

i.     On information and belief, Kumar used A-1's assets to purchase personal residences;

j.     On information and belief, Suresh used A-1's assets to pay for his legal defense in a personal automobile accident case; and

k.     On information and belief, Suresh used A-1's assets to pay for legal services in proceedings to remove Kumar from the board of directors of PPUK, a company in England owned by Khosla family members.

18.     Plaintiffs believe that evidence will be obtained in discovery that will show a number of additional transfers of A-1's assets to and/or to the sole benefit of its shareholders during the time A-1 was failing and refusing to honor its obligations to the Implats Companies.

**B.** **Other Actions To Which A-1 Is A Party**

    **1.** **The Alliance Lawsuit**

19.    In addition to this lawsuit, A-1 is also a defendant in another case in this Court, captioned *Alliance Industries Limited v. A-1 Specialized Services & Supplies, Inc.*, Docket No. 02510, filed in April 2013 (the "Alliance Lawsuit").

20.    As set forth above, one of the owners of A-1 is defendant Suresh Khosla (32%). The other owners of A-1 are Suresh's brothers, Om Khosla (32%) and Ashok Kumar Khosla (31%), and Suresh's wife Leena Khosla (5%).

21.    The documents attached to Alliance Industries Limited's ("Alliance's") complaint in that action disclose that the managing director of Alliance is Ashok Kumar Khosla, who at all relevant times was also a 31% shareholder, a Director, and an Officer of A-1.

22.    In its complaint, Alliance claimed that A-1 owes it an amount in excess of $70 million.

23.    The Alliance Lawsuit was settled in September 2015.  The settlement agreement in that case requires A-1 to pay Alliance $5.6 million upon the retirement of A-1's debt to Om, or in May 2017, whichever is sooner; also requires A-1 to pay Alliance $10 million at the rate of $50,000 per month for 15 years, with a balloon payment at the end; and also gave Alliance the right to execute on an additional $20 million judgment against A-1 in the event that Impala sought to enforce an arbitration award against A-1.  At the time the settlement agreement in the Alliance Lawsuit was negotiated and signed, Kumar was the co-CEO and Chairman of the Board of A-1 and was receiving an annual salary of $240,000 from A-1, and Kumar was also the sole owner, officer and director of Alliance.

### 2.  The New Jersey Action

24.   In addition to the Alliance Lawsuit, another lawsuit involving A-1 was commenced in 2013 in the Superior Court of New Jersey, Law Division, Burlington County, Docket # L-000778-13 (the "New Jersey Action").  In the New Jersey Action, A-1 sued Kumar, for repayment of $15 million of A-1's funds that Kumar used to purchase Alliance.  Kumar, in turn, filed a counterclaim against A-1 and a third-party complaint against Suresh.

25.   In his counterclaim and third-party Complaint, Kumar alleged that in summer of 2012, shortly after the execution of the July 2012 MOU between A-1 and the Implats Companies, Suresh and Leena seized control of A-1, barring Kumar from any participation in the management of that company.

26.   Kumar further alleged that after his ouster from management of A-1, Suresh has been causing A-1 to transfer "large sums of money" to Slogam, and that no business purpose is being served by those transfers.[2]  Despite these allegations, Kumar's counterclaim and third party Complaint did not request that Suresh be required to return the transferred funds to A-1.

27.   Kumar further alleged that Slogam is owned by the same three brothers who own A-1, *i.e.*, by Kumar, Suresh and Om Khosla.

28.   Search of public records revealed that the general partner of Slogam is a Pennsylvania company named Slogam Enterprises, Inc., of which Suresh Khosla is the President.

29.   Kumar further alleged that other creditors of A-1, besides the Implats Companies, are not being paid when due.

---

[2] Kumar does not identify the Slogam entity to which money is being transferred, but states that Slogam is the owner of the Croydon facility which is the principal place of business of A-1.  Search of public records revealed that the owner of the Croydon facility is Slogam Limited Partnership.

30.     Kumar further alleged that in response to his March 2013 request that A-1 produce books and records for his inspection, A-1 failed to produce sufficient information about the financial management of the company.

31.     The New Jersey Action was settled in September 2015.  The settlement agreement in that case requires Kumar to pay A-1 the total amount of $5.5 million over the next 15 years, at the rate of approximately $25,000 per month with a balloon payment at the end.

### 3.     The Bucks County Action

32.     Yet another lawsuit involving A-1 was filed on June 19, 2013 in the Court of Common Pleas of Bucks County, Pennsylvania, under docket No. 2013-04631.  The plaintiff in that action is Om, and the defendants are A-1, Kumar and Suresh.

33.     In his Complaint, Om alleged, *inter alia*, that Kumar and Suresh are diverting assets of A-1 "for purposes that are unrelated to A-1's business and serve no business purposes;" committing accounting irregularities; and engaging in self-dealing.

34.     Om claimed in the Bucks County Action that Suresh and Kumar diverted A-1's corporate assets to establish Alliance in the 1990s, and then orchestrated a buyout in 2012 that used A-1's assets to purchase Alliance from its nominal shareholders, as a result of which Kumar ended up owning 100% of Alliance without putting in any money of his own.

35.     Om also claimed in the Bucks County Action that Suresh had received $4,026,240 and Kumar had received $4,894,920 in excessive shareholder distributions from A-1 over the preceding 12 years.  Despite these allegations, however, Om's complaint did not request that Suresh and Kumar be required to repay the excess distributions to A-1.

36.     The Bucks County Action was settled in May 2015.  Instead of requiring Suresh and Kumar to return 100% of their excessive shareholder distributions to A-1, the settlement agreement in the Bucks County Action requires A-1 to make additional shareholder payments of

11

$10 million to Om and $1.1 million to Leena, and requires Suresh and Kumar to each pay $2.5 million to Om.

37.     Leena did not assert any claims, against A-1 or anyone else, in the Bucks County Action; nonetheless, in the settlement of that action A-1 agreed to pay Leena $1.1 million.

## COUNT ONE – FRAUDULENT TRANSFER – VIOLATION OF 12 Pa. C.S. § 5104(a)(1)

### (Against all Defendants)

38.     The paragraphs above are incorporated as though fully set forth herein.

39.     Under Section 5104(a)(1) of the Pennsylvania Uniform Fraudulent Transfer Act ("PUFTA"), 12 Pa. C.S. § 5101, *et seq.*, a transfer is "fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made . . . ," if the debtor made the transfer "with an actual intent to hinder, delay or defraud any creditor."

40.     Section 5104 further provides that in determining "actual intent to hinder, delay or defraud", the relevant factors include whether: (i) the transfer was to an insider; (ii) the transfer was not for reasonably equivalent value; (iii) the debtor was insolvent before the transfer, or became insolvent shortly after the transfer, with insolvency presumed from the inability to pay one's bills when due; and (iv) the transfer was concealed. *Id.*, *see also* 12 Pa. C.S. § 5102.

41.     Defendants Suresh, Kumar, Om, and Leena are all insiders of A-1, Slogam is owned by Suresh, Kumar and Om, and Alliance is owned and controlled by Kumar.

42.     Assets of A-1 have been transferred to defendants Suresh, Kumar, Om, and Leena with the actual intent to hinder, delay or defraud A-1's creditors, as follows:

      a.     A-1, Suresh, Kumar, Om, and Leena entered into confidential settlement agreements to resolve the Bucks County Action, the New Jersey Action, and the Alliance Lawsuit, which relieved or reduced Suresh and Kumar's obligations to A-1, while requiring A-1 to make large settlement payments to its shareholders and related parties, including Alliance, and

to give its shareholders and related parties priority security interests in A-1's assets, in amounts which exceed A-1's current total assets, at a time when A-1 cannot satisfy financial obligations to its creditors; and

        b.    Suresh, Kumar, Om, and Leena took shareholder distributions from A-1, at a time when A-1 could not satisfy financial obligations owed to its creditors.

43.    Assets of A-1 were transferred by A-1 and Suresh to defendants Kumar and Om with the actual intent to hinder, delay or defraud A-1's creditors, when Suresh authorized, and Kumar and Om received, salary payments of $20,000 per month during time periods when they were not working for A-1.

44.    Assets of A-1 were transferred by A-1 and Suresh to defendant Kumar with the actual intent to hinder, delay or defraud A-1's creditors, when A-1, Suresh and Kumar authorized A-1 to pay $15 million to Sudhir Chopra so that Kumar could purchase Chopra's interest in Alliance for himself.

45.    On information and belief, assets of A-1 were transferred by A-1, Suresh and Kumar with the actual intent to hinder, delay or defraud A-1's creditors, when A-1, Suresh and Kumar diverted A-1's assets to companies in England and India.

46.    Assets of A-1 were transferred by A-1 and Suresh with the actual intent to hinder, delay or defraud A-1's creditors, when A-1 and Suresh transferred A-1's funds to Slogam, and Suresh subsequently had Slogam pay $1 million from Slogam's bank account to Suresh.

47.    All of the transfers set forth above were made at a time when A-1 was unable to meet its payment obligations to the Implats Companies.

48.    On information and belief, at or about the time of the transfers, A-1 was also delinquent in paying its other creditors.

49. The Implats Companies were creditors of A-1 both before and after the transfers of A-1's assets set forth above.

50. The transfers of A-1's assets set forth above were and/or are made with the intent to hinder and defraud the Implats Companies.

51. Defendants concealed from A-1's creditors, including the Implats Companies, the facts and amounts of the transfers to or for the benefit of A-1's insiders set forth above.

52. In approving and participating in the transfers of A-1's assets, defendants Suresh, Kumar, Om, and Leena acted outrageously, willfully and/or with reckless indifference to the rights of A-1's creditors, including the Implats Companies.

53. On information and belief, A-1 may have engaged in other fraudulent transfers of its assets.

54. All of the specific information about the transfers of money from A-1 to defendants Suresh, Kumar, Om and Leena, and to Slogam and Alliance, done with the actual intent to hinder, delay or defraud the Implats Companies and, possibly, other improper transfers of A-1's assets, is within the exclusive control of the defendants.

55. Section 5108 of the PUFTA provides that to the extent a transfer is voidable under that Act, the creditor may recover judgment for the value of the asset transferred against the first transferee of the asset, and against any subsequent transferee other than a good faith transferee who gave value in exchange for the asset.  12 Pa. C.S. § 5108(b).

WHEREFORE, plaintiffs Impala Platinum Holdings Limited and Impala Refining Services Limited request that:

a. A judgment be entered in plaintiffs' favor and against Suresh Khosla, Ashok Kumar Khosla, Om K. Khosla, and Leena Khosla, in an amount equal to the lesser of (i)

14

the value of the money fraudulently transferred to them from A-1, or (ii) the amount of judgment against A-1 on plaintiffs' contract claims in the Implats Contract Action;

      b.    Defendants Suresh Khosla, Ashok Kumar Khosla, Om K. Khosla, and Leena Khosla be required to account for and restore to A-1 all of the assets of A-1 that were transferred to them with the intent to hinder, delay or defraud A-1's creditors the Implats Companies;

      c.    The Court further require that all of the assets of A-1 so accounted for and restored to A-1 be applied to the payment of plaintiffs' judgment against A-1 in the Implats Contract Action;

      d.    The Court issue an injunction prohibiting A-1, Suresh Khosla, Ashok Kumar Khosla, Om K. Khosla, and Leena Khosla from transferring any additional money or property of A-1 without receiving a reasonably equivalent value in exchange;

      e.    The Court impose a constructive trust in favor of Implats and Impala Refining on Suresh's ownership interest in Slogam in an amount equal to the amount of money wrongfully transferred to Slogam by A-1;

      f.    The Court impose a constructive trust in favor of Implats and Impala Refining on Kumar's ownership interest in Alliance in the amount equal to the amount of money wrongfully transferred from A-1 and used for Kumar's purchase of Chopra's shares of Alliance;

      g.    The Court appoint a receiver for A-1;

      h.    The Court award punitive damages to plaintiffs for defendants' outrageous, reckless and willful conduct; and

      i.    The Court grant such other relief as it deems just.

## COUNT TWO – FRAUDULENT TRANSFER – VIOLATION OF 12 Pa. C.S. §§5 104(a)(2) AND 5105

### (Against all Defendants)

56.     The paragraphs above are incorporated as though fully set forth herein.

57.     Section 5104(a)(2) of PUFTA provides that a transfer is "fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made . . . ," if the debtor did not receive a reasonably equivalent value in exchange for the transfer, and the debtor was engaged in business or transactions for which the assets of the debtor were "unreasonably small."

58.     Section 5105 of PUFTA provides that a transfer is "fraudulent as to a creditor whose claim arose before the transfer," if the debtor did not receive a reasonably equivalent value in exchange for the transfer and was insolvent at the time, or became insolvent as a result, of the transfer.

59.     Assets of A-1 were transferred to defendants Suresh, Kumar, Om, and Leena, without A-1 receiving a reasonably equivalent value in exchange, as follows:

        a.     A-1, Suresh, Kumar, Om and Leena entered into confidential settlement agreements to resolve the Bucks County Action, the New Jersey Action, and the Alliance Lawsuit, which relieved or reduced Suresh and Kumar's obligations to A-1, while requiring A-1 to make excessive settlement payments to its shareholders and related parties, including Alliance, and to give its shareholders and related parties priority security interests in A-1's assets; and

        b.     Suresh, Kumar, Om, and Leena took shareholder distributions from A-1, at a time when A-1 could not satisfy financial obligations owed to its creditors.

60.     Assets of A-1 were transferred by A-1 and Suresh to defendants Kumar and Om without A-1 receiving a reasonably equivalent value in exchange, when Suresh authorized, and

16

Kumar and Om received, salary payments of $20,000 per month during time periods when they were not working for A-1.

61.     Assets of A-1 were transferred by A-1 and Suresh to defendant Kumar without A-1 receiving a reasonably equivalent value in exchange, when A-1, Suresh and Kumar authorized A-1 to pay $15 million to Sudhir Chopra so that Kumar could purchase Chopra's interest in Alliance for himself.

62.     On information and belief, assets of A-1 were transferred by A-1, Suresh and Kumar without A-1 receiving a reasonably equivalent value in exchange, when A-1, Suresh and Kumar diverted A-1's assets to companies in England and India.

63.     Assets of A-1 were transferred by A-1 and Suresh without A-1 receiving a reasonably equivalent value in exchange, when A-1 and Suresh transferred large amounts of A-1's funds to Slogam, and Suresh subsequently had Slogam transfer $1 million to Suresh.

64.     At the time of the transfers set forth above, A-1 was engaged in transactions, including its transactions with the Implats Companies, for which its assets were unreasonably small.

65.     On information and belief, at or about the time of the transfers set forth above, A-1 was insolvent, or A-1 became insolvent as a result of the transfers.

66.     In approving and participating in A-1's transfers of its assets, Suresh, Kumar, Om, and Leena did not act in good faith.

67.     The Implats Companies were creditors of A-1 both before and after the transfers of A-1's assets set forth above.

68.     On information and belief, A-1 may have engaged in other fraudulent transfers of its assets.

69.     All the specific information about the transfers of money from A-1 to defendants Suresh, Kumar, Om and Leena, and to Slogam and Alliance, without A-1 receiving a reasonably equivalent value in exchange and, possibly, other improper transfers of A-1's assets, is within the exclusive control of the defendants.

WHEREFORE, plaintiffs Impala Platinum Holdings Limited and Impala Refining Services Limited request that:

a.     A judgment be entered in plaintiffs' favor and against Suresh Khosla, Ashok Kumar Khosla, Om K. Khosla, and Leena Khosla, in the amount equal to the lesser of (i) the value of the money transferred from A-1, or (ii) the amount of judgment against A-1 on plaintiffs' contract claims in the Implats Contract Action;

b.     Defendants Suresh Khosla, Ashok Kumar Khosla, Om K. Khosla, and Leena Khosla, be required to account for and restore to A-1 all of the assets of A-1 that were transferred to them without A-1 receiving a reasonably equivalent value in exchange, at a time when A-1 was engaged in transactions for which its assets were unreasonably small and/or when A-1 was insolvent or became so as a result of the transfers;

c.     The Court further require that all of the assets of A-1 so accounted for and restored to A-1 be applied to the payment of plaintiffs' judgment against A-1 in the Implats Contract Action;

d.     The Court issue an injunction prohibiting A-1, Suresh Khosla, Ashok Kumar Khosla, Om K. Khosla, and Leena Khosla from transferring any additional money or property of A-1 without receiving a reasonably equivalent value in exchange;

e.      The Court impose a constructive trust in favor of Implats and Impala Refining on Suresh's ownership interest in Slogam in an amount equal to the amount of money wrongfully transferred to Slogam by A-1;

f.      The Court impose a constructive trust in favor of Implats and Impala Refining on Kumar's ownership interest in Alliance in the amount equal to the amount of money wrongfully transferred from A-1 and used for Kumar's purchase of Chopra's shares of Alliance;

g.      The Court appoint a receiver for A-1; and

h.      The Court grant such other relief as it deems just.

### COUNT THREE – BREACH OF FIDUCIARY DUTY

**(Against Suresh Khosla, Ashok Kumar Khosla, Om Khosla, and Leena Khosla)**

70.      The paragraphs above are incorporated as though fully set forth herein.

71.      Under Pennsylvania law, an officer of an insolvent corporation stands in a fiduciary relationship with and owes a fiduciary duty to the corporation's creditors. *See, e.g., Travelers Cas. & Sur. Co. v. Irex Corp.*, 2002 WL 32351176, at * 3 (E.D. Pa. May 31, 2001), citing *Brown v. Presbyterian Ministers Fund*, 484 F.2d 998, 1005 (3d Cir. 1973).

72.      When A-1 became insolvent, *i.e.*, unable to make timely payments to its creditors, Suresh, Kumar, Om, and Leena, in their capacities as officers and directors of A-1, owed a fiduciary duty to A-1's creditors, including the Implats Companies, to preserve the assets of A-1 for fair and equitable distribution to the creditors.

73.      Suresh Khosla breached his fiduciary duty to the Implats Companies by, *inter alia*:

a.      entering into confidential settlement agreements to resolve the Bucks County Action, the New Jersey Action, and the Alliance Lawsuit, which relieved or reduced Suresh and Kumar's obligations to A-1, while requiring A-1 to make large settlement payments

to its shareholders and related parties, including Alliance, and to give its shareholders and related parties priority security interests in A-1's assets, in amounts which exceed A-1's current total assets, at a time when A-1 cannot satisfy financial obligations to its creditors;

        b.     approving and taking shareholder distributions from A-1, at a time when A-1 could not satisfy financial obligations to its creditors;

        c.     as a director, the CEO and President of A-1, authorizing the continued payment of $20,000 per month salaries to Kumar and Om at a time when neither of them were providing services to A-1, while A-1 could not satisfy financial obligations to its creditors;

        d.     transferring assets of A-1 to Slogam, and then transferring the assets from Slogam to himself;

        e.     as a director, the CEO and President of A-1, authorizing A-1 to pay $15 million to Sudhir Chopra so that Kumar could purchase Chopra's interest in Alliance for himself, at a time when A-1 could not satisfy financial obligations to its creditors;

        f.     on information and belief, diverting A-1's assets for his personal benefit to companies in England and India, at a time when A-1 could not satisfy financial obligations to its creditors;

        g.     using A-1's assets to pay for his legal defense in a personal automobile accident case, at a time when A-1 could not satisfy financial obligations to its creditors;

        h.     using A-1's assets to pay for legal services in proceedings to remove Kumar from the board of directors of PPUK, at a time when A-1 could not satisfy financial obligations to its creditors; and

        i.       as an officer and director of A-1, allowing and failing to act to prevent the other shareholders of A-1 from breaching their fiduciary duties to A-1's creditors, including the Implats Companies.

74.      Ashok Kumar Khosla breached his fiduciary duty to the Implats Companies by, *inter alia*:

        a.      entering into confidential settlement agreements to resolve the Bucks County Action, the New Jersey Action, and the Alliance Lawsuit, which relieved or reduced Suresh and Kumar's obligations to A-1, while requiring A-1 to make large settlement payments to its shareholders and related parties, including Alliance, and to give its shareholders and related parties priority security interests in A-1's assets, in amounts which exceed A-1's current total assets, at a time when A-1 cannot satisfy financial obligations to its creditors;

        b.      approving and taking shareholder distributions from A-1, at a time when A-1 could not satisfy financial obligations to its creditors;

        c.      accepting a $20,000 per month salary from A-1 at a time when he was not providing services to A-1, while A-1 could not satisfy financial obligations to its creditors;

        d.      using $15 million of A-1's funds to purchase Sudhir Chopra's interest in Alliance for himself, at a time when A-1 could not satisfy financial obligations to its creditors;

        e.      usurping and attempting to usurp A-1's corporate opportunities for himself and his company Alliance;

        f.      on information and belief, diverting A-1's assets to companies in England and India, at a time when A-1 could not satisfy financial obligations to its creditors;

        g.      on information and belief, using A-1's funds to purchase personal residences; and

h.      as an officer and director of A-1, allowing and failing to act to prevent the other shareholders of A-1 from breaching their fiduciary duties to A-1's creditors, including the Implats Companies.

75.     Om Khosla breached his fiduciary duty to the Implats Companies by, *inter alia*:

a.      entering into confidential settlement agreements to resolve the Bucks County Action, the New Jersey Action, and the Alliance Lawsuit, which relieved or reduced Suresh and Kumar's obligations to A-1, while requiring A-1 to make large settlement payments to its shareholders and related parties, including Alliance, and to give its shareholders and related parties priority security interests in A-1's assets, in amounts which exceed A-1's current total assets, at a time when A-1 cannot satisfy financial obligations to its creditors;

b.      approving and taking shareholder distributions from A-1, at a time when A-1 could not satisfy financial obligations to its creditors;

c.      accepting a $20,000 per month salary from A-1 at a time when he was not providing services to A-1, while A-1 could not satisfy financial obligations to its creditors; and

d.      as an officer and director of A-1, allowing and failing to act to prevent the other shareholders of A-1 from breaching their fiduciary duties to A-1's creditors, including the Implats Companies.

76.     Leena Khosla breached her fiduciary duty to the Implats Companies by:

a.      entering into confidential settlement agreements to resolve the Bucks County Action, the New Jersey Action, and the Alliance Lawsuit, which relieved or reduced Suresh and Kumar's obligations to A-1, while requiring A-1 to make large settlement payments to its shareholders and related parties, including Alliance, and to give its shareholders and related

parties priority security interests in A-1's assets, in amounts which exceed A-1's current total assets, at a time when A-1 cannot satisfy financial obligations to its creditors;

       b.      approving and taking shareholder distributions from A-1, at a time when A-1 could not satisfy financial obligations to its creditors; and

       c.      as an officer and director of A-1, allowing and failing to act to prevent the other shareholders of A-1 from breaching their fiduciary duties to A-1's creditors, including the Implats Companies.

77.      Suresh, Kumar, Om and Leena breached their fiduciary duty to the Implats Companies by failing to authorize A-1 to file for voluntary bankruptcy when it became insolvent, and instead using their status as insiders of A-1 to obtain preferential and otherwise unlawful payments from A-1 to the detriment of A-1's legitimate creditors, including the Implats Companies.

78.      Defendants' breaches of their fiduciary duties to the Implats Companies caused damages and losses to those Companies.

79.      Defendants' breaches of their fiduciary duties to the Implats Companies constituted self-dealing.

80.      Defendants' breaches of their fiduciary duties were done intentionally for the purpose of helping A-1 to evade its obligations to its legitimate creditors, including the Implats Companies, and were outrageous, willful, and/or recklessly indifferent to the rights of A-1's creditors.

WHEREFORE, plaintiffs Impala Platinum Holdings Limited and Impala Refining Services Limited request that:

a.      judgment be entered against Suresh Khosla, Ashok Kumar Khosla, Om K. Khosla, and Leena Khosla requiring them to account for and restore to A-1 all of the assets of A-1 that have been distributed to them or for their benefit since A-1 became insolvent;

b.      the funds restored to A-1 be applied to the payment of A-1's legitimate creditors, including plaintiffs;

c.      the Court award punitive damages to plaintiffs for defendants' outrageous, reckless and willful conduct; and

d.      the Court award plaintiffs pre-judgment interest, costs and such other relief as this Court may deem just.

Richard L. Bazelon, Esq.
PA ID No. 02505
Lisa A. Barton, Esq.
PA ID No. 78139
Michael F.R. Harris, Esq.
PA ID No. 56948
BAZELON LESS & FELDMAN, P.C.
One South Broad Street, Suite 1500
Philadelphia, PA 19107
Tel. (215) 568-1155

Date:   March 23, 2016