## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

———————————————————————  :
                                                :
IMPALA PLATINUM HOLDINGS LIMITED   :
   and                             :
IMPALA REFINING SERVICES LIMITED,   :
               Plaintiffs,   :
                                                :
          v.   :   Civ. A. No. 16-1343-MMB
                                                :
A-1 SPECIALIZED SERVICES   :
& SUPPLIES, INC., SLOGAM LIMITED   :
PARTNERSHIP, SURESH K. KHOSLA,   :
ASHOK KUMAR KHOSLA,   :
OM P. KHOSLA, LEENA KHOSLA,   :
RAJESH SETH, MICHAEL O'HAYER, and   :
ALLIANCE INDUSTRIES LIMITED,   :
            Defendants.   :
                                                :
———————————————————————  :
                                                :
IMPALA PLATINUM HOLDINGS LIMITED   :
   and                             :
IMPALA REFINING SERVICES LIMITED,   :
              Plaintiffs,   :
                                                :
          v.   :   Civ. A. No. 13-2930-MMB
                                                :
A-1 SPECIALIZED SERVICES   :
& SUPPLIES, INC., SLOGAM LIMITED   :
PARTNERSHIP, SURESH K. KHOSLA,   :
ASHOK KUMAR KHOSLA,   :
OM P. KHOSLA, LEENA KHOSLA,   :
RAJESH SETH, MICHAEL O'HAYER, and   :
ALLIANCE INDUSTRIES LIMITED,   :
            Defendants.   :
                                                :
———————————————————————  :
                                                :
ALLIANCE INDUSTRIES LIMITED and   :
ALLIANCE INDUSTRIES, FZC,   :
              Plaintiffs   :
                                                :
          v.   :   Civ. A. No. 13-2510-MMB
                                                :
A-1 SPECIALIZED SERVICES & SUPPLIES,   :
INC.,   :
             Defendant.   :
      —————   :
                                                :

IMPALA PLATINUM HOLDINGS LIMITED        :
   and                                                                   :
IMPALA REFINING SERVICES LIMITED,        :
                     Intervenors.       :
                                   :
LEENA KHOSLA,                                                    :
                   Intervenor.          :
                                   :
OM P. KHOSLA,                                                    :
                   Intervenor.          :
         _____                                       :
                                   :
IMPALA PLATINUM HOLDINGS LIMITED        :
   and                                                                   :
IMPALA REFINING SERVICES LIMITED,        :
                    Plaintiffs,           :
        v.                                                              :
                                   :
A-1 SPECIALIZED SERVICES                             :
& SUPPLIES, INC., SLOGAM LIMITED           :
PARTNERSHIP, SURESH K. KHOSLA,           :
ASHOK KUMAR KHOSLA,                               :
OM P. KHOSLA, LEENA KHOSLA,                  :
RAJESH SETH, MICHAEL O'HAYER, and      :
ALLIANCE INDUSTRIES LIMITED,                 :
                    Defendants.         :
_____    :

## AMENDED COMPLAINT

Plaintiffs Impala Platinum Holdings Ltd. ("Implats") and Impala Refining Services Ltd.

("Impala Refining") (collectively, "the Implats Companies"), through their undersigned counsel,

Bazelon Less & Feldman, P.C., file this Amended Complaint against defendants A-1 Specialized

Services and Supplies, Inc. ("A-1"), Slogam Limited Partnership ("Slogam"), Suresh K. Khosla

("Suresh"), Ashok Kumar Khosla ("Kumar"), Om P. Khosla ("Om"), Leena Khosla ("Leena"),

Rajesh Seth ("Seth"), Michael O'Hayer ("O'Hayer"), and Alliance Industries Limited

("Alliance"), and in support thereof aver as follows:

## NATURE AND HISTORY OF THE ACTION

1.      This action involves claims for fraudulent transfer, breach of fiduciary duty, conversion, violation of RICO, civil conspiracy, aiding and abetting, deepening insolvency, and for a declaratory judgment, which are brought by two companies incorporated and doing business in South Africa, against closely-held Pennsylvania corporation A-1, its four officers, directors and shareholders, a fifth director who is also A-1's CEO, a sixth officer who is also A-1's General Counsel, a foreign corporation that is wholly owned and controlled by one of A-1's shareholders, and a Pennsylvania limited partnership that is owned by three of A-1's shareholders.

2.      Plaintiffs Implats and Impala Refining, and defendant A-1, are in the business of, amongst other things, extracting valuable platinum group metals from spent automotive catalytic converters.  They have had a long business relationship in the course of which plaintiffs, Implats and Impala Refining, extended to the defendant A-1 advances and loans totaling in excess of $179 million.

3.      During its long business relationship with Implats and Impala Refining, A-1 continually failed and refused to make payments on its obligations in accordance with the terms of the parties' agreements, and A-1 repeatedly informed Implats and Impala Refining that it had no intention of honoring its obligations under the parties' agreements and that it had no financial means to do so.

4.      In May 2013, the Implats Companies filed an action in this court against A-1, captioned *Impala Platinum Holdings Limited et al. v. A-1 Specialized Services and Supplies, Inc.*, Docket No.13-CV-2930 ("the Implats Contract Action").  In August 2013, the Implats Companies filed an Amended Complaint in the Implats Contract Action that added defendants Suresh Khosla and Slogam Limited Partnership, and added tort claims, including claims based on Suresh Khosla's transferring A-1's funds to Slogam.  By the terms of a Consent Order entered on January

9, 2014, the Court in the Implats Contract Action referred the parties to mediation, and if the mediation was unsuccessful, referred the Implats Companies and A-1 to binding arbitration before the London Court of International Arbitration ("LCIA"), of the contract claims in that case arising out of the business relationship between them.

5.      In December 2015, the LCIA issued a Final Arbitration Award in favor of Implats and Impala Refining, and against A-1, in the amount of $189,668.037.20, plus pre-award interest of $9,699,000, post-award interest of $10,392.77 per day, and arbitration costs of $172,229.  The Implats Companies moved to confirm the Final Arbitration Award in the Implats Contract Action. By Order dated April 26, 2016, this Court granted the Implats Companies' motion to confirm the Final Arbitration Award, and entered judgment in their favor in the Implats Contract Action in conformity with the Final Arbitration Award.

6.      On March 4, 2016, the Implats Companies moved for leave to intervene in a separate case pending in this Court, captioned *Alliance Industries Limited et al. v. A-1 Specialized Services & Supplies, Inc.*, Docket No. 13-2510 (the "Alliance Action").  On April 13, 2016, this Court granted the Implats Companies' motion, and directed them to file a Rule 24(c) pleading within 7 days.  On April 20, 2016, the Implats Companies filed a Rule 24(c) pleading in the Alliance Action.

7.      On March 21, 2016, the Implats Companies moved for leave to file a Second Amended Complaint in the Implats Contract Action, to add as defendants in that action Kumar, Om, and Leena, and to assert additional facts regarding events that occurred and information that was disclosed to the Implats Companies since the Amended Complaint was filed in that action in August 2013.  The motion for leave to amend remains pending today.  To preserve the claims asserted in the proposed Second Amended Complaint under the applicable statutes of limitation,

4

on March 23, 2016, the Implats Companies commenced a new action, captioned *Impala Platinum Holdings Limited et al. v. A-1 Specialized Services & Supplies, Inc. et al.*, Docket No. 16-1343 (the "New Implats Action").

8.    On June 21, 2016, this Court entered an Order (the "Receivership Order") in the Implats Contract Action, the Alliance Action, and the New Implats Action, appointing a Receiver to take control, custody and management of the tangible personal property and assets of A-1, as well as A-1's accounts receivable (collectively, the "Receivership Property").

9.    On July 28, 2016, this Court entered an Order in the Implats Contract Action, the Alliance Action, and the New Implats Action, authorizing the Implats Companies to file an Amended Complaint no later than August 2, 2016, and requiring the Implats Companies to state therein all claims they have against any present party or additional party arising out of the factual nexus of the above-captioned cases.

## THE PARTIES

10.    Plaintiff Implats is a company incorporated under the laws of South Africa with a principal place of business at 2 Fricker Road, Illovo 2196, Johannesburg, South Africa.

11.    Plaintiff Impala Refining is a company incorporated under the laws of South Africa with a principal place of business at 2 Fricker Road, Illovo 2196, Johannesburg, South Africa.

12.    Defendant A-1 is a corporation organized under the laws of the Commonwealth of Pennsylvania with its principal place of business at 2707 State Road, Croydon, Pa. 19021.

13.    Defendant Suresh K. Khosla is an individual residing at 40 Landing Court, Moorestown, New Jersey. Suresh is a director and a 32% shareholder of A-1 and, with his wife Leena, more than one-third owner of A-1. From the time of A-1's founding through June 2014, Suresh was the President and CEO of A-1.

5

14.     Defendant Ashok Kumar Khosla is an individual residing at 44 Landing Court, Moorestown, New Jersey.  Kumar is a 31% shareholder of A-1, and from the time of its founding until February 2016, was a director of A-1.  Until October 2012, Kumar was the Secretary of A-1; from October 2012 to May 2015, Kumar was the Vice-President of A-1; and from approximately May 2015 to February 2016, Kumar was the President and the CEO or co-CEO of A-1, and the Chairman of A-1's Board of Directors.  Since September 2012, Kumar has been the sole owner, director and officer of defendant Alliance.

15.     Defendant Om P. Khosla is an individual residing at 5 Cobblestone Court, Moorestown, New Jersey.  At all relevant times, Om was the Vice President of A-1, and on information and belief, since the time A-1 was founded, Om has been a director and a 32% shareholder of A-1.

16.     Defendant Leena Khosla is an individual residing at 40 Landing Court, Moorestown, New Jersey.  At all relevant times, Leena was the Treasurer of A-1, and since approximately May 2015, Leena also has been the Secretary of A-1.  On information and belief, since the time A-1 was founded, Leena has been a director and a 5% owner of A-1.  Leena is the wife of defendant Suresh Khosla.

17.     Defendant Rajesh Seth is an individual residing at 26 Brooks Road, Moorestown, New Jersey.  Seth was the CEO of A-1 from July 2014 to May 29, 2015, and the co-CEO of A-1 from September 18, 2015 to early February 2016, and he has remained as co-CEO or sole CEO of A-1 to the present.  On information and belief, Seth became a director of A-1 in February 2016.  Seth is the son of the sister of defendants Suresh, Kumar, and Om Khosla.

18.     Defendant Michael O'Hayer is an individual residing at 430 Cardigan Terrace, West Chester, Pennsylvania.  Starting on May 29, 2015 and continuing through the present, O'Hayer has been an officer of A-1.

19.     Defendant Alliance Industries Limited is a corporation organized under the laws of Gibraltar, an Overseas Territory of the United Kingdom, with its principal place of business located at Executive Suite Q1-2, Office No. 2&3, SAIF Zone, Sharjah, United Arab Emirates. Alliance is owned and controlled entirely by defendant Kumar, and with respect to the matters set forth herein, Alliance acted at all time as the alter ego of Kumar.

20.     Defendant Slogam is a Pennsylvania Limited Partnership with a registered office at 1210 Northbrook Drive, Suite 280, Trevose, Pennsylvania.  Its general partner is Slogam Enterprises, Inc., a Pennsylvania corporation with offices at the same Trevose address.  Suresh is the president of Slogam Enterprises, Inc., and Suresh, Kumar and Om are the owners of Slogam Enterprises, Inc. and the limited partners of Slogam.

## JURISDICTION AND VENUE

21.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, 18 U.S.C. § 1964 (which vests this Court with jurisdiction over civil RICO actions), and pursuant to the diversity statute, 28 U.S.C. § 1332(a)(2) (which vests this Court with jurisdiction over actions between citizens of a State and citizens of a foreign state).  The amount in controversy exceeds $75,000, exclusive of interest and costs.

22.     The Court appointed Charles N. Persing as the Receiver of A-1 Specialized Services and Supplies, Inc. on June 21, 2016, and ordered that the Receiver was empowered to assume control, custody and management of A-1's tangible and personal assets.  The Receiver has done so.

23.     The Court has *in rem* jurisdiction over the Receivership Property, and the completing claims thereto.

24.     The Court also has supplemental jurisdiction over the claims set forth herein pursuant to 28 U.S.C. § 1367(a).

25.     Venue lies in this Court pursuant to 18 U.S.C. § 1965 because defendants can be found and/or transacted their affairs in this district, and pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events giving rise to this action took place in this district.

## FACTUAL BACKGROUND

### A.     A-1's Growing Insolvency Since At Least 2012

26.     A-1 has been unable to pay its debts to the Implats Companies as they became due since 2012, at the latest.

27.     The business relationship between A-1 and the Implats Companies was documented in a series of agreements, the latest set of which provided that they were in effect from July 1, 2008 through June 30, 2013 ("the 2008 Agreements").

28.     On July 5, 2012, A-1 and the Implats Companies entered into a final debt restructuring agreement, titled Memorandum of Understanding ("the July 2012 MOU").

29.     Within a few days of the execution of the July 2012 MOU, A-1 began complaining to the Implats Companies that the terms were too burdensome and that A-1 was unable to comply with them.

30.     In October 2012, A-1 stopped making monthly payments to the Implats Companies required under the July 2012 MOU for repayment of loans and repayment of additional advances (the "Special Advance").

31.     A-1 failed to pay the Implats Companies in full the refining fees that were due in October 2012, and A-1 failed to pay the Implats Companies any refining fees due thereafter.

32.     In the fall of 2012, Suresh repeatedly stated to management of the Implats Companies that A-1 had no financial resources to make the payments required by the July 2012 MOU.

33.     A-1's liabilities exceeded its assets starting in 2012, at the latest, and A-1's liabilities have continued to exceed its assets in every year since 2012, by increasing amounts.

34.     At the end of 2011, A-1 represented that it had total assets of $693,008,301, and current liabilities of $564,677,350.

35.     At the end of 2012, A-1 represented that it had total assets of $301,499,256, and current liabilities of $366,349,341.  In 2012, A-1 represented that it sustained a total business loss of $114,699,602, and had retained earnings of negative $75,342,486.

36.     At the end of 2013, A-1 represented that it had total assets of $120,892,593, and current liabilities of $236,984,139.  In 2013, A-1 represented that it sustained a total business loss of $82,413,252, and had retained earnings of negative $157,215,379.

37.     At the end of 2014, A-1 represented that it had total assets of $91,506,479, and total liabilities of $246,891,144.

38.     At the end of 2015, A-1 represented that it had total assets of $69,874,685, and total liabilities of $241,268,162.

39.     As of July 15, 2016, A-1 represented that it had total assets of $60,902,267, and total liabilities of $244,733,519.

**B.     A-1's Transfers Of Its Assets To Shareholders And Directors During The Time When A-1 Was Insolvent**

40.     During the period when A-1 was insolvent, A-1 and its shareholders and directors Suresh, Kumar, Om and Leena approved the transfers and transferred millions of dollars of its

assets to and otherwise for the sole benefit of A-1's shareholders Suresh, Kumar, Om and Leena, including, *inter alia*, the following payments:

      a.      During the period from March 2010 through February 2012, while A-1 and the Implats Companies were entering into a series of agreements necessitated by A-1's growing indebtedness to Impala Refining, A-1 issued shareholder distributions to Suresh, Kumar, Om and Leena totaling $15,250,000;

      b.      In 2012, at a time when A-1 could not satisfy its financial obligations to its creditors, including the Implats Companies, and A-1's liabilities exceeded its assets, A-1 issued shareholder distributions totaling $4,249,500, including $1,360,000 to Suresh, $1,317,000 to Kumar, $1,360,000 to Om, and $212,500 to Leena;

      c.      From July 2012 to July 2013, A-1 paid Kumar a monthly salary of $40,000, and from July 2013 to July 2014, A-1 continued to pay Kumar a monthly salary of $20,000, even though Kumar was not working for A-1 during that time period;

      d.      Until July 2013, A-1 paid Om a monthly salary of $40,000, and after July 2013, A-1 paid Om a monthly salary of $20,000. Starting on or about December 2013, and extending at least several months thereafter, A-1 continued to pay Om a monthly salary of $20,000, even though Om was no longer working for A-1;

      e.      Until July 2013, A-1 paid Suresh a monthly salary of $50,000, and after July 2013, A-1 paid Suresh a monthly salary of $25,000. On information and belief, Suresh continued to receive a monthly salary of $25,000 from A-1 after he resigned in June 2014, even though he was no longer working for A-1;

      f.      Until July 2013, A-1 paid Leena a monthly salary of $40,000, and after July 2013, A-1 paid Leena a monthly salary of $20,000;

g.      Throughout the period of A-1's insolvency, the shareholders of A-1 – Suresh, Kumar, Om and Leena – have received salaries that greatly exceeded the value of services (if any) provided;

h.      A-1 leases its Croydon facility from Slogam, pursuant to a written lease with a set monthly rent.[1]  Starting in the fall of 2012, Suresh caused A-1 to transfer assets of A-1 to Slogam in amounts that greatly exceeded the rent payments due, and between January and December of 2013, Suresh caused Slogam to issue $1 million in checks to Suresh;

i.      In 2012, A-1 wired $15 million of A-1's funds to Sudhir Chopra, so that Kumar could purchase Chopra's interest in Alliance, a transaction for which A-1 received no value in exchange.  This transfer resulted in Kumar gaining 100% ownership of Alliance with no investment of Kumar's own funds, after which Kumar authorized Alliance to sue A-1 for $70 million;

j.      On information and belief, since he became the sole owner of Alliance in September 2012, Kumar has attempted to divert A-1's business opportunities to Alliance;

k.      On information and belief, Kumar and Suresh diverted A-1's funds to companies in England and India, at a time when A-1 did not have sufficient assets to pay its obligations to creditors, including the Implats Companies;

l.      On information and belief, Kumar used A-1's assets to purchase personal residences;

m.      On information and belief, Suresh used A-1's assets to pay for his legal defense in a personal automobile accident case; and

---

[1] Under the Lease in effect from September 29, 2009 to September 29, 2014, the monthly rental charge was $65,000. A-1 has represented that the current monthly rental charge is $80,000.

n.    On information and belief, Suresh used A-1's assets to pay for legal services in proceedings to remove Kumar from the board of directors of PPUK, a company in England owned by Khosla family members.

41.    Plaintiffs believe that evidence will be obtained in discovery that will show a number of transfers of A-1's assets to and/or to the sole benefit of its shareholders during the time A-1 was failing and refusing to honor its obligations to the Implats Companies and was otherwise insolvent, in addition to those identified above and in subsequent parts of this Amended Complaint.

## C.    Other Actions To Which A-1 Is A Party And Additional Transfers Of Assets Of A-1 To Shareholders And Directors During The Time When A-1 Was Insolvent

### 1.    The Alliance Action

42.    In addition to this lawsuit, A-1 is also a defendant in another case in this Court, captioned *Alliance Industries Limited v. A-1 Specialized Services & Supplies, Inc.*, Docket No. 02510, filed in May 2013 (the "Alliance Action").

43.    As set forth above, one of the owners of A-1 is defendant Suresh Khosla (32%). The other owners of A-1 are Suresh's brothers, Om Khosla (32%) and Ashok Kumar Khosla (31%), and Suresh's wife Leena Khosla (5%).

44.    The documents attached to Alliance Industries Limited's ("Alliance's") complaint in that action disclose that the managing director of Alliance was Ashok Kumar Khosla, who at all relevant times was also a 31% shareholder, a director, and an officer of A-1.

45.    In its complaint, Alliance claimed that A-1 owes it an amount in excess of $70 million.

46.    The Alliance Action was settled in September 2015.  In the settlement agreement in that case:

      a.     A-1 agreed to pay Alliance $5.6 million upon the retirement of A-1's debt to Om, or in June 2017, whichever is sooner, and A-1 gave Alliance a security interest to secure payment of the $5.6 million; and

      b.     A-1 agreed to pay Alliance $10 million at the rate of $33,333.33 per month plus interest for the first three years, $41,667.67 per month plus interest for the next two years, with a balloon payment of the balance plus interest due in 2030, and A-1 gave Alliance a Promissory Note which authorized Alliance to confess judgment for the principal balance and accrued interest under the Note upon the occurrence of an Event of Default (including, *inter alia*, A-1 becoming insolvent); and

      c.     A-1 gave Alliance the right to execute on an additional $20 million judgment against A-1 in the event that Impala sought to enforce an arbitration award against A-1; and

      d.     A-1 gave Leena a security interest to secure payment of $1.5 million that A-1 agreed to pay Leena in settlement of the Bucks County Action (described in paragraphs 57-63 below).

47.    At the time the settlement agreement in the Alliance Action was negotiated and signed, Kumar was the CEO and Chairman of the Board of A-1 and was receiving an annual salary of $240,000 from A-1, and Kumar was also the sole owner, officer and director of Alliance.

**2.     The New Jersey Action**

48.    In addition to the Alliance Action, another lawsuit involving A-1 was commenced in 2013 in the Superior Court of New Jersey, Law Division, Burlington County, Docket # L-000778-13 (the "New Jersey Action"). In the New Jersey Action, A-1 sued Kumar for repayment of $15 million of A-1's funds that Kumar used to purchase Alliance in 2012. Kumar, in turn, filed a counterclaim against A-1 and a third-party complaint against Suresh.

49.     In his counterclaim and third-party complaint, filed on April 25, 2013, Kumar alleged that in the summer of 2012, shortly after the execution of the July 2012 MOU between A-1 and the Implats Companies, Suresh and Leena seized control of A-1, barring Kumar from any participation in the management of that company.

50.     Kumar further alleged that after his ouster from management of A-1, Suresh caused A-1 to transfer "large sums of money" to Slogam Limited Partnership, and that no business purpose was served by those transfers.[2]   Despite these allegations, Kumar's counterclaim and third party complaint did not request that Suresh be required to return the transferred funds to A-1.

51.     Kumar further alleged that Slogam is owned by the same three brothers who own A-1, *i.e.*, by Kumar, Suresh and Om Khosla.

52.     Search of public records revealed that the general partner of Slogam is a Pennsylvania company named Slogam Enterprises, Inc., of which Suresh Khosla is the President.

53.     Kumar further alleged that other creditors of A-1, besides the Implats Companies, were not being paid when due.

54.     Kumar further alleged that in response to his March 2013 request that A-1 produce books and records for his inspection, A-1 failed to produce sufficient information about the financial management of the company.

55.     The New Jersey Action was settled in September 2015, as part of the settlement of the Alliance Action.   A-1 agreed to resolve its $15 million claim against Kumar as follows:

---

[2] Kumar did not identify the Slogam entity to which money was being transferred, but stated that Slogam was the owner of the Croydon facility which is the principal place of business of A-1.   Search of public records revealed that the owner of the Croydon facility is Slogam Limited Partnership.

       a.     A-1's claim against Kumar was reduced by $2,500,000 based on Kumar's agreement to pay Om $2,500,000 in settlement of Om's claim against Kumar in the Bucks County Action;

       b.     A-1's claim against Kumar was further reduced by $1,000,000 for expenses, costs and fees allegedly incurred by Kumar that Kumar claimed should have been reimbursed by A-1;

       c.     A-1's claim against Kumar was further reduced by $6,000,000 as cancelled indebtedness income to Kumar; and

       d.     Kumar agreed to pay the balance of $5,500,000 to A-1 at the rate of $12,500 per month plus interest for the first three years, and $16,667.67 per month plus interest for the next two years, with a balloon payment of the balance plus interest due in 2030.

56.     The settlement constituted a large forgiveness of Kumar's indebtedness to A-1.

### 3.     The Bucks County Action

57.     Yet another lawsuit involving A-1 was filed on June 19, 2013 in the Court of Common Pleas of Bucks County, Pennsylvania, under docket No. 2013-04631.  The plaintiff in that action was Om, and the defendants were A-1, Kumar and Suresh.

58.     In his complaint, Om alleged, *inter alia*, that Kumar and Suresh were diverting assets of A-1 "for purposes that are unrelated to A-1's business and serve no business purposes;" committing accounting irregularities; and engaging in self-dealing.

59.     Om claimed in the Bucks County Action that Suresh and Kumar diverted A-1's corporate assets to establish Alliance in the 1990s, and then orchestrated a buyout in 2012 that used A-1's assets to purchase Alliance from its nominal shareholders, as a result of which Kumar ended up owning 100% of Alliance without putting in any money of his own.

60.     Om also claimed in the Bucks County Action that Suresh had received $4,026,240 and Kumar had received $4,894,920 in excessive shareholder distributions from A-1 over the preceding 12 years.  Despite these allegations, however, Om's complaint did not request that Suresh and Kumar be required to repay the excess distributions to A-1.

61.     The Bucks County Action was settled in May 2015.  Instead of requiring Suresh and Kumar to return 100% of their excessive shareholder distributions to A-1, the settlement agreement in the Bucks County Action required A-1 to make additional shareholder payments of $10 million to Om and $1.1 million to Leena, and required Suresh and Kumar to each pay $2.5 million to Om (this $2.5 million was subsequently offset against Kumar's $15 million debt to A-1).  In the settlement agreement in that case:

a.     Although Om's complaint did not seek any payment or damages from A-1, A-1 agreed to pay Om a total of $10 million, by means of an immediate lump-sum payment of $3,500,000 to Om at closing, with the balance plus interest to be paid at the rate of $300,000 per month for 21 months; and

b.     A-1 gave Om a Promissory Note and a security interest in all of A-1's assets and inventory to secure the payment of the $6,500,000 balance; and

c.     Although Leena had not asserted any claims against A-1 in the Bucks County Action, A-1 agreed to pay Leena $1,500,000, at the rate of $68,181.82 per month for 22 months, commencing in July 2015;[3] and

---

[3] As part of the settlement of the Alliance Action in September 2015, A-1 gave Leena a security interest in all of A-1's assets to secure payment of the $1,500,000 settlement amount granted to Leena as part of the Bucks County Settlement in May 2015.

d.      Suresh agreed to pay Om $2,500,000, by means of a $500,000 lump-sum payment at closing, with the balance to be paid later from the proceeds of the sale of real properties owned in part by Suresh; and

e.      Kumar agreed to pay Om $2,500,000, by means of a $1,000,000 lump-sum payment at closing, with the balance to be paid later from the proceeds of the sale of real property owned in part by Kumar; and

f.      Kumar was appointed Chairman of the Board of A-1 and co-CEO of A-1 at the closing of the Bucks County Action settlement.

62.    Leena did not assert any claims, against A-1 or anyone else, in the Bucks County Action; nonetheless, in the settlement of that action A-1 agreed to pay Leena $1.5 million.

63.    Alliance, Om and Leena have taken actions to execute against the assets of A-1, based on the foregoing settlements and the purported priorities and security interests obtained thereon as a result thereof.  Execution against the assets of A-1 has not taken place because of legal actions taken by the Implats Companies.

### D.      Conspiracy Among Defendants

64.    At least since the time that the Impala Companies filed for arbitration of their claims against A-1 in the London Metals Exchange, on April 14, 2013, the shareholder/directors, Suresh, Kumar, Om and Leena, have conspired to convert all of the assets of A-1 for themselves, knowing that A-1 was insolvent. This conspiracy has included their lawsuits against A-1, and agreeing among themselves that each shareholder/director would approve settlements for the other shareholder/directors in return for the other shareholder/directors approving his/her settlement.

65.    The foregoing conspiracy and actions pursuant thereto have included these shareholder/directors approving the granting of security interests for each other in the assets of

A-1, in order to render A-1 judgment proof as to legitimate creditors, and failing and refusing to place A-1 in bankruptcy, which would have required that creditors be treated fairly and preferential payments and transactions be recouped and invalidated.

66.      Pursuant to this conspiracy and the actions by the shareholder/directors thereunder, the shareholder/directors have enriched themselves, at the expense of A-1 and its legitimate creditors, in connection with the settlements of the foregoing lawsuits, as follows:

      a.      Kumar:

      *i.*      Agreement by A-1 to pay Alliance, which is solely owned and controlled by Kumar, $20 million, contingent upon the Implats Companies obtaining and seeking to enforce a judgment against A-1. This is now the subject of a judgment lien against A-1's assets, obtained immediately after the Implats Companies brought a motion to confirm the arbitration award against A-1.

      *ii.*      A promissory note by A-1 to Alliance in the amount of $10 million. A-1 has been making payments to Alliance on this note in the amount of $33,333.33 per month plus interest (including interest, these payments are in amounts exceeding $55,000/month), from November 2015 to May 2015, when the payments were halted by Court Order.

      *iii.*      A judgment and UCC lien in favor of Alliance, against A-1, in the amount of $5.6 million, to be paid no later than June 2017.

      *iv.*      Reduction of Kumar's $15 million obligation to A-1 by $2.5 million as a result of the settlement of Om's claims in the Bucks County litigation.

      *v.*      Reduction of Kumar's $15 million obligation to A-1 by $1 million on account of expenses, costs and fees allegedly incurred by Kumar in litigation.

*vi.*       Cancellation by A-1 of $6 million of Kumar's $15 million obligation to A-1.

*vii.*      Exceedingly generous terms for Kumar to repay the balance of $5.5 million of his $15 million obligation to A-1, including $4.65 million of principal and interest on the $5.5 million not due until October 2030.

*viii.*     Relief of indebtedness by Kumar to A-1 based on excessive past distributions by A-1 to Kumar in the amount of at least several million dollars.

*ix.*       Om's agreement to accept $2.5 million to settle his claim against Kumar, which relieved Kumar of his indebtedness to A-1 of more than $4.2 million as a result of the excessive distributions which Kumar had received from A-1.

b.       Om:

*i.*        Payment by A-1 to Om in the amount of $10 million, of which $3.5 million was paid at the time of closing in May 2015, and a first-priority lien against the assets of A-1 that was obtained on the balance of $6,475,527.39, plus interest. Of this balance, $3.3 million has been paid by A-1 to Om from July 2015 to May 2016, when the payments were halted by Court Order.  Om was not owed this money by A-1.

c.       Leena:

*i.*        Payment by A-1 to Leena in the amount of $1.5 million, secured by a recorded second priority lien against all of A-1's assets.   Of this amount, A-1 has paid Leena $750,000 of the $1.5 million from July 2015 to May 2016, when the payments were halted by Court Order.  Leena was not owed this money by A-1.

d.       Suresh

      *i.*     Relief of indebtedness by Suresh to A-1 based on excessive past distributions by A-1 to Suresh in the amount of at least several million dollars.

      *ii.*     Kumar, Om and Leena's decision not to require Suresh to repay A-1 the $1 million or more in A-1's funds Suresh improperly transferred to Slogam and then had Slogam transfer to Suresh.

      *iii.*     Om's agreement to accept $2.5 million to settle his claim against Suresh, which relieved Suresh of the debt of at least $3.5 million which he owed to A-1 as a result of excessive distributions which Suresh had received from A-1.

      *iv.*     Suresh is the husband of Leena.

67.    Alliance participated in the conspiracy described in paragraphs 65 and 66 above as the alter ego of Kumar and beneficiary of most of the enrichment obtained by Kumar, as described above.

68.    Michael O'Hayer participated and enabled the conspiracy alleged in paragraphs 65 and 66 above by executing the settlement agreements in May 2015 and September 2015 as an officer of A-1.

69.    The conspiracy has also included these directors and officers agreeing among themselves to have A-1 pay to themselves salaries when they were not performing work, or excessive salaries for minimal work, including during the period of A-1's insolvency.

70.    The officers and directors also agreed among themselves that they would not place A-1 in bankruptcy, even though A-1 was insolvent, because to do so would cause them to lose the foregoing judgments and security interests and other unlawful enrichments, and require them to disgorge the aforesaid payments which they unlawfully obtained, and would defeat their plan to foreclose any recovery by the legitimate creditors of A-1.  The placement of A-1 in bankruptcy

would have resulted, *inter alia*, in these alleged obligations to the shareholder/directors being set aside under the preference provisions of the Bankruptcy Code, and other remedies being obtained against the shareholder/directors as a result of their unlawful actions.  Although Kumar was not nominally a director of A-1 after February 2016, he and his attorneys participated in the decision of A-1's Board of Directors thereafter not to place A-1 in bankruptcy, including full participation at a Board of Directors meeting on June 1, 2016.

71.     The conspiracy has also included the defendants' deliberate concealment of the fact and terms of the May 29, 2015 settlement of the Bucks County Action, and their deliberate concealment of the terms of the September 15, 2015 settlement of the Alliance Action and the New Jersey Action.

72.     Rajesh Seth participated in the parts of the conspiracy described in paragraphs 69 and 70 above, as CEO of A-1, and later as CEO and director of A-1, including the payment of salary to shareholders and refusal to place A-1 in bankruptcy.

73.     Upon information and belief, plaintiffs aver that there are other components of this conspiracy and the actions pursuant thereto which will be uncovered through discovery in this case.

## COUNT ONE – FRAUDULENT TRANSFER – VIOLATION OF 12 Pa. C.S. § 5104(a)(1)

### (Against A-1, Slogam, Suresh Khosla, Ashok Kumar Khosla, Om Khosla, Leena Khosla and Alliance Industries Limited)

74.     The paragraphs above are incorporated as though fully set forth herein.

75.     Under Section 5104(a)(1) of the Pennsylvania Uniform Fraudulent Transfer Act ("PUFTA"), 12 Pa. C.S. § 5101, *et seq.*, a transfer is "fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made . . . ," if the debtor made the transfer "with an actual intent to hinder, delay or defraud any creditor."

76.     Section 5104 further provides that in determining "actual intent to hinder, delay or defraud", the relevant factors include whether: (i) the transfer was to an insider; (ii) the transfer was not for reasonably equivalent value; (iii) the debtor was insolvent before the transfer, or became insolvent shortly after the transfer, with insolvency presumed from the inability to pay one's bills when due; and (iv) the transfer was concealed.  *Id.*, *see also* 12 Pa. C.S. § 5102.

77.     A-1 has been insolvent since October 2012, at the latest.

78.     Defendants Suresh, Kumar, Om, and Leena were the sole shareholders of A-1 at all relevant times, up to and including the present.  Slogam is owned by Suresh, Kumar and Om, Suresh is the President of Slogam's general partner, and Alliance is owned and controlled solely by Kumar.  Om and Leena at all relevant times have been officers and directors of A-1.  Kumar has been CEO or co-CEO of A-1 at all relevant times at least until February 2016, and was the CEO and Board Chairman of A-1 when the settlement agreements related to the Bucks County Action, the New Jersey Action and the Alliance Action were negotiated and executed in May 2015 and September 2015.

79.     Assets of A-1 have been transferred to defendants Suresh, Kumar, Om, Leena, and Alliance with the actual intent to hinder, delay or defraud A-1's creditors, as follows:

a.     A-1, Suresh, Kumar, Om, Leena and Alliance entered into confidential settlement agreements to resolve the Bucks County Action, the New Jersey Action, and the Alliance Action, which relieved or reduced Suresh and Kumar's obligations to A-1, while requiring A-1 to make large settlement payments to its shareholders and related parties, including Alliance, and to give its shareholders and related parties priority security interests in A-1's assets, in amounts which exceeded A-1's current total assets, at a time when A-1 could not satisfy financial obligations to its creditors;

b.    Substantial payments have been made to Alliance, Om and Leena pursuant to these settlement agreements; and

c.    Suresh, Kumar, Om, and Leena took shareholder distributions from A-1, at a time when A-1 could not satisfy financial obligations owed to its creditors.

80.    The settlement agreements were structured so that A-1 retained possession of the cash and assets subject to the security interests, with payment extending over a period of years in some cases, while the security interests prevented the Implats Companies from reaching these assets.  The defendants structured the agreements in this manner because the assets of A-1 consisted of inventory which needs to be processed.

81.    The terms of the settlement agreements were kept confidential and were not disclosed to the Implats Companies until February 2016, after Alliance moved to execute on the $20 million judgment.

82.    The settlement agreements were entered into after the Implats Companies had sued A-1 seeking $200 million in damages.

83.    The May 29, 2015 and September 15, 2015 settlement agreements were executed shortly before A-1 anticipated that the Implats Companies would receive an award in their favor in the LCIA Arbitration, and reduce that award to a judgment against A-1.

84.    The transfers, obligations and security interests granted to Om, Leena, and Alliance under the settlement agreements constituted all or substantially all of A-1's assets.

85.    A-1 did not receive reasonably equivalent value in exchange for the transfers, obligations and security interests granted in the May 2015 and September 2015 settlement agreements.  On the contrary:

   a. in the Bucks County Action, Om asserted claims against Suresh and Kumar for breach of fiduciary duty, breach of contract, conversion, unjust enrichment, waste of corporate assets, and for an accounting, and Om asserted no claims against A-1, so A-1 received no value in exchange for its agreement to pay Om $10 million and give him a security interest;

   b. Leena was not a party to the Bucks County Action, and did not assert claims against A-1 in any action, so A-1 received no value in exchange for its agreement to pay Leena $1.5 million and give her a security interest; and

   c. the merits and value of Alliance's claims against A-1 were never determined by a neutral fact-finder, so there is no evidence that the value provided was reasonably equivalent to the consideration received.

  86. The settlements with Om and with Leena were voluntary gifts from A-1 to its insiders, since Om did not assert any claims against A-1 in the Bucks County Action, and Leena did not sue A-1 in any action, and A-1 did not owe Om or Leena any amount.

  87. Assets of A-1 were transferred by A-1 at the direction of its sole shareholders and directors to themselves with the actual intent to hinder, delay or defraud A-1's creditors, when the shareholders and directors of A-1 authorized A-1 to pay them salaries that greatly exceeded the value of the services they provided to A-1 at a time when A-1 was insolvent, including without limitation the continued payment of salaries to Suresh, Om, and Kumar during time periods when they were not working for A-1.

  88. Assets of A-1 were transferred by A-1 at the direction of its sole shareholders and directors to defendant Kumar with the actual intent to hinder, delay or defraud A-1's creditors, when the shareholders and directors of A-1, including Suresh and Kumar, authorized A-1 to pay

$15 million to Sudhir Chopra so that Kumar could purchase Chopra's interest in Alliance for himself.

89.     Assets of A-1 were transferred by A-1 at the direction of its sole shareholders and directors to defendant Kumar with the actual intent to hinder, delay or defraud A-1's creditors when the shareholders and directors of A-1 authorized A-1 to release and give up the right to receive repayment from Kumar of $9.5 million of Kumar's $15 million debt to A-1, and authorized A-1 to agree to terms for the repayment of the $5.5 million balance that allowed Kumar to pay A-1 at the rate of $12,500 per month for three years, $16,667.67 per month for two years, with the balance of $4.65 million in principal plus interest not due until October 2030.

90.     On information and belief, assets of A-1 were transferred by A-1 at the direction of its sole shareholders and directors with the actual intent to hinder, delay or defraud A-1's creditors, when A-1, Suresh and Kumar diverted A-1's assets to companies in England and India.

91.     Assets of A-1 were transferred by A-1 at the direction of its sole shareholders and directors with the actual intent to hinder, delay or defraud A-1's creditors, when Suresh caused A-1 to transfer A-1's funds to Slogam in amounts that greatly exceeded the amounts of rent payments due, and Suresh caused Slogam to pay $1 million from Slogam's bank account to Suresh.

92.     All of the transfers set forth above were made at a time when A-1 was unable to meet its payment obligations to the Implats Companies.

93.     On information and belief, at or about the time of the transfers set forth above, A-1 was also delinquent in paying other creditors.

94.     The Implats Companies were creditors of A-1 both before and after the transfers of A-1's assets set forth above.

95.     The transfers of A-1's assets set forth above were and/or are made with the intent to hinder and defraud the Implats Companies.

96.     Defendants concealed from A-1's creditors, including the Implats Companies, the facts and amounts of the transfers to or for the benefit of A-1's insiders set forth above.

97.     In approving and participating in the transfers of A-1's assets, defendants Suresh, Kumar, Om, and Leena acted outrageously, willfully and/or with reckless indifference to the rights of A-1's creditors, including the Implats Companies.

98.     On information and belief, A-1 may have engaged in other fraudulent transfers of its assets.

99.     All of the specific information about the transfers of money from A-1 to defendants Suresh, Kumar, Om and Leena, and to Slogam and Alliance, done with the actual intent to hinder, delay or defraud the Implats Companies and, possibly, other improper transfers of A-1's assets, is within the exclusive control of the defendants.

100.     Section 5108 of the PUFTA provides that to the extent a transfer is voidable under that Act, the creditor may recover judgment for the value of the asset transferred against the first transferee of the asset, and against any subsequent transferee other than a good faith transferee who gave value in exchange for the asset.  12 Pa. C.S. § 5108(b).

WHEREFORE, plaintiffs Impala Platinum Holdings Limited and Impala Refining Services Limited request that:

a.     Judgment be entered in plaintiffs' favor and against Suresh Khosla, Ashok Kumar Khosla, Om P. Khosla, Leena Khosla, Slogam Limited Partnership, and Alliance Industries Limited, jointly and severally, in an amount equal to the lesser of  (*i*) the value of the money

fraudulently transferred to them from A-1, or (*ii*) the amount of judgment against A-1 on plaintiffs' contract claims in the Implats Contract Action;

      b.     Defendants Suresh Khosla, Ashok Kumar Khosla, Om P. Khosla, Leena Khosla, Slogam Limited Partnership, and Alliance Industries Limited be required to account for and restore to A-1 all of the assets of A-1 that were transferred to them as described above;

      c.     The Court require that all of the assets of A-1 so accounted for and restored to A-1 be applied to A-1's obligations to its legitimate creditors, in the manner prescribed by law;

      d.     The Court further set aside the obligations to Alliance, Om and Leena set forth in the settlement agreements;

      e.     The Court issue an injunction prohibiting Suresh Khosla, Ashok Kumar Khosla, Om P. Khosla, and Leena Khosla from transferring or causing to be transferred any additional money or property of A-1 to themselves or to Alliance or to Slogam;

      f.     The Court impose a constructive trust in favor of the Implats Companies on Suresh's ownership interest in Slogam in an amount equal to the amount of money wrongfully transferred to Slogam by A-1;

      g.     The Court impose a constructive trust in favor of the Implats Companies on Kumar's ownership interest in Alliance in the amount equal to the amount of money wrongfully transferred from A-1 and used for Kumar's purchase of Chopra's shares of Alliance;

      h.     The Court award punitive damages to plaintiffs for defendants' outrageous, reckless and willful conduct; and

      i.     The Court grant such other relief as it deems just.

## COUNT TWO – FRAUDULENT TRANSFER – VIOLATION OF 12 Pa. C.S. §§ 5104(a)(2) AND 5105

### (Against A-1, Slogam, Suresh Khosla, Ashok Kumar Khosla, Om Khosla, Leena Khosla, and Alliance Industries Limited)

101.   The paragraphs above are incorporated as though fully set forth herein.

102.   Section 5104(a)(2) of PUFTA provides that a transfer is "fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made . . . ," if the debtor did not receive a reasonably equivalent value in exchange for the transfer, and the debtor was engaged in business or transactions for which the assets of the debtor were "unreasonably small."

103.   Section 5105 of PUFTA provides that a transfer is "fraudulent as to a creditor whose claim arose before the transfer," if the debtor did not receive a reasonably equivalent value in exchange for the transfer and was insolvent at the time, or became insolvent as a result, of the transfer.

104.   Assets of A-1 were transferred to defendants Suresh, Kumar, Om, Leena and Alliance, without A-1 receiving a reasonably equivalent value in exchange, as follows:

a.   A-1, Suresh, Kumar, Om, Leena and Alliance entered into confidential settlement agreements to resolve the Bucks County Action, the New Jersey Action, and the Alliance Action, which relieved or reduced Suresh's and Kumar's obligations to A-1, while requiring A-1 to make excessive settlement payments to its shareholders and related parties, including Alliance, and to give its shareholders and related parties priority security interests in A-1's assets;

b.   Substantial payments have been made to Alliance, Om and Leena pursuant to these settlement agreements; and

      c.      Suresh, Kumar, Om, and Leena took shareholder distributions from A-1, at a time when A-1 could not satisfy financial obligations owed to its creditors.

105.    At the time of these transfers, A-1 was insolvent.

106.    Assets of A-1 were transferred by A-1 at the direction of its sole shareholders and directors to themselves without A-1 receiving a reasonably equivalent value in exchange, when the shareholders and directors of A-1 authorized A-1 to pay them salaries that greatly exceeded the value of the services they provided to A-1, including without limitation the continued payment of salaries to Suresh, Om and Kumar during time periods when they were not working for A-1.

107.    Assets of A-1 were transferred by A-1 at the direction of its sole shareholders and directors to defendant Kumar without A-1 receiving a reasonably equivalent value in exchange, when the shareholders and directors of A-1, including Suresh and Kumar, authorized A-1 to pay $15 million to Sudhir Chopra so that Kumar could purchase Chopra's interest in Alliance for himself.

108.    Assets of A-1 were transferred by A-1 at the direction of its sole shareholders and directors to defendant Kumar without A-1 receiving a reasonably equivalent value in exchange the actual intent to hinder, delay or defraud A-1's creditors when the shareholders and directors of A-1 authorized A-1 to release and give up the right to receive repayment from Kumar of $9.5 million of Kumar's $15 million debt to A-1, and authorized A-1 to agree to terms for the repayment of the $5.5 million balance that allowed Kumar to pay A-1 at the rate of $12,500 per month for three years, $16,667.67 per month for two years, with the balance of $4.65 million in principal plus interest not due until October 2030.

109.    On information and belief, assets of A-1 were transferred by A-1 at the direction of its sole shareholders and directors without A-1 receiving a reasonably equivalent value in exchange, when A-1, Suresh and Kumar diverted A-1's assets to companies in England and India.

110.    Assets of A-1 were transferred by A-1 at the direction of its sole shareholders and directors without A-1 receiving a reasonably equivalent value in exchange, when Suresh caused A-1 to transfer A-1's funds to Slogam in amounts that greatly exceeded the amounts of rent payments due, and Suresh caused Slogam to transfer $1 million to Suresh.

111.    At the time of the transfers set forth above, A-1 was engaged in transactions, including its transactions with the Implats Companies, for which its assets were unreasonably small.

112.     On information and belief, at or about the time of the transfers set forth above, A-1 was insolvent, or A-1 became insolvent as a result of the transfers.

113.    In approving and participating in A-1's transfers of its assets, Suresh, Kumar, Om, and Leena did not act in good faith.

114.    The Implats Companies were creditors of A-1 both before and after the transfers of A-1's assets set forth above.

115.    On information and belief, A-1 may have engaged in other fraudulent transfers of its assets.

116.    All the specific information about the transfers of money from A-1 to defendants Suresh, Kumar, Om and Leena, and to Slogam and Alliance, without A-1 receiving a reasonably equivalent value in exchange and, possibly, other improper transfers of A-1's assets, is within the exclusive control of the defendants.

WHEREFORE, plaintiffs Impala Platinum Holdings Limited and Impala Refining Services Limited request that:

    a.      Judgment be entered in plaintiffs' favor and against Suresh Khosla, Ashok Kumar Khosla, Om P. Khosla, Leena Khosla, Slogam Limited Partnership, and Alliance Industries Limited, jointly and severally, in the amount equal to the lesser of (*i*) the value of the money transferred from A-1, or (*ii*) the amount of judgment against A-1 on plaintiffs' contract claims in the Implats Contract Action;

    b.      Defendants Suresh Khosla, Ashok Kumar Khosla, Om P. Khosla, Leena Khosla, Slogam Limited Partnership, and Alliance Industries Limited be required to account for and restore to A-1 all of the assets of A-1 that were transferred to them without A-1 receiving a reasonably equivalent value in exchange, at a time when A-1 was engaged in transactions for which its assets were unreasonably small and/or when A-1 was insolvent or became so as a result of the transfers;

    c.      The Court further require that all of the assets of A-1 so accounted for and restored to A-1 be applied to the payment of A-1's obligations to its legitimate creditors in the manner prescribed by law;

    d.      The Court further set aside the obligations to Alliance, Om and Leena set forth in the May 2015 and September 2015 settlement agreements;

    e.      The Court issue an injunction prohibiting A-1, Suresh Khosla, Ashok Kumar Khosla, Om P. Khosla, and Leena Khosla from transferring or causing to be transferred any additional money or property of A-1 to themselves or to Alliance or Slogam;

f.      The Court impose a constructive trust in favor of the Implats Companies on Suresh's ownership interest in Slogam in an amount equal to the amount of money wrongfully transferred to Slogam by A-1;

g.      The Court impose a constructive trust in favor of the Implats Companies on Kumar's ownership interest in Alliance in the amount equal to the amount of money wrongfully transferred from A-1 and used for Kumar's purchase of Chopra's shares of Alliance; and

h.      The Court grant such other relief as it deems just.

## COUNT THREE – BREACH OF FIDUCIARY DUTY

### (Against Suresh Khosla, Ashok Kumar Khosla, Om Khosla, Leena Khosla, Rajesh Seth and Michael O'Hayer)

117.    The paragraphs above are incorporated as though fully set forth herein.

118.    A-1 is insolvent. Its liabilities exceed its assets by hundreds of millions of dollars.

119.    The Implats Companies are judgment creditors of A-1, in an amount in excess of $200,000,000.

120.    A-1 is a closely held corporation. Ninety-five percent of its stock is owned by three brothers, and the remaining five percent is owned by the wife of one of the brothers.

121.    Until sometime after September 15, 2015, at all relevant times the sole directors of A-1 were the shareholders. The shareholder/directors continue to be directors of A-1, with the exception of one who stopped being a director, in name, in February 2016, but who continued, at least for some time, as a CEO of A-1.

122.    Seth, the single non-shareholder director of A-1, who became a director sometime after September 15, 2015, is also a member of the Khosla family, and serves also as the other co-CEO of A-1.

123.    The four shareholder/directors above identified have engaged in a purposeful, agreed course of action to convert the assets of A-1 for themselves, in which they approve transactions for themselves and each other, knowing that A-1 is insolvent, for the purpose of enriching themselves and rendering A-1 judgment proof for legitimate creditors.  In addition to their actions collectively converting the assets of A-1 for themselves, the directors of A-1 have joined together to refuse to place A-1 in bankruptcy, and continue to refuse to do so, because a bankruptcy proceeding would cause their self-dealing conversion transactions to be unwound and set aside.  This conspiracy and acts in furtherance thereof continue to the present.

124.    Seth, the single director who is not also a shareholder, has aided and abetted the shareholder/directors in their aforesaid plans and acts, and himself committed breaches of fiduciary duty.

125.    Apart from the Implats Companies and the purported claims of Khosla family members and Alliance, A-1 has only two non-ordinary course of business creditors who have not been paid.  Both of those creditors are fully aware of this case, and their rights as creditors will not be adversely affected by the claims asserted herein by the Implats Companies.

126.    On June 21, 2016, the Court issued an Order appointing a receiver to take control, custody, and management of the tangible personal property and assets of A-1 and to accomplish the orderly liquidation of A-1, pursuant to the terms of the said Order.

127.    Under Pennsylvania law, officers and directors of corporations owe fiduciary duties to the corporation.

128.    Under Pennsylvania law, an officer of an insolvent corporation stands in a fiduciary relationship with and owes a fiduciary duty to the corporation's creditors.  *See, e.g.,*

*Travelers Cas. & Sur. Co. v. Irex Corp.*, 2002 WL 32351176, at * 3 (E.D. Pa. May 31, 2001), citing *Brown v. Presbyterian Ministers Fund*, 484 F.2d 998, 1005 (3d Cir. 1973).

129.    When A-1 became insolvent, *i.e.*, unable to make timely payments to its creditors, Suresh, Kumar, Om, and Leena, in their capacities as officers and directors of A-1, and Seth, as an officer and later as a director of A-1, and O'Hayer, as an officer of A-1, owed a fiduciary duty to A-1's creditors, including the Implats Companies, to preserve the assets of A-1 for fair and equitable distribution to the creditors.

130.    Suresh Khosla breached his fiduciary duties by, *inter alia*:

a.      as an officer and director of A-1, authorizing A-1 to enter into, and on his own behalf entering into confidential settlement agreements in 2015 to resolve the Bucks County Action, the New Jersey Action, and the Alliance Action, which relieved or reduced Suresh's and Kumar's obligations to A-1, while requiring A-1 to make large settlement payments to its shareholders and related parties, including $10 million to Om, $1.5 million to Leena, and $35.6 million to Alliance, and to give its shareholders Om and Leena and related party Alliance priority security interests in A-1's assets, in amounts which exceeded A-1's current total assets, at a time when A-1 could not satisfy financial obligations to its creditors;

b.      approving for himself and the other shareholders, and taking for himself, shareholder distributions from A-1, at a time when A-1 could not satisfy financial obligations to its creditors;

c.      as a director, the CEO and President of A-1, authorizing the continued payment of excessive salaries to A-1's shareholder/directors, including without limitation the continued payment of salaries to Suresh, Om and Kumar during time periods when they were not providing services to A-1 and A-1 could not satisfy financial obligations to its creditors;

d.      accepting an excessive salary from A-1 at a time when he was not providing services to A-1 and/or while A-1 could not satisfy financial obligations to its creditors;

e.      transferring assets of A-1 to Slogam, and then transferring the assets from Slogam to himself;

f.      as a director, the CEO and President of A-1, authorizing A-1 to pay $15 million to Sudhir Chopra so that Kumar could purchase Chopra's interest in Alliance for himself, at a time when A-1 could not satisfy financial obligations to its creditors, and subsequently forgiving this debt;

g.      on information and belief, diverting A-1's assets for his personal benefit to companies in England and India, at a time when A-1 could not satisfy financial obligations to its creditors;

h.      using A-1's assets to pay for his legal defense in a personal automobile accident case, at a time when A-1 could not satisfy financial obligations to its creditors;

i.      using A-1's assets to pay for legal services in proceedings to remove Kumar from the board of directors of PPUK, at a time when A-1 could not satisfy financial obligations to its creditors; and

j.      as an officer and director of A-1, aiding and abetting the other shareholders, directors and officers of A-1 in breaching their fiduciary duties to A-1's creditors, and allowing and failing to act to prevent them from doing so.

131.    Ashok Kumar Khosla breached his fiduciary duties by, *inter alia*:

a.      as an officer and director of A-1, authorizing A-1 to enter into, and on his own behalf entering into confidential settlement agreements in 2015 to resolve the Bucks County Action, the New Jersey Action, and the Alliance Action, which relieved or reduced Suresh's and

Kumar's obligations to A-1, while requiring A-1 to make large settlement payments to its shareholders and related parties, including $10 million to Om, $1.5 million to Leena, and $35.6 million to Alliance, and to give its shareholders Om and Leena and related party Alliance priority security interests in A-1's assets, in amounts which exceeded A-1's current total assets, at a time when A-1 could not satisfy financial obligations to its creditors;

b.    approving and taking shareholder distributions from A-1, at a time when A-1 could not satisfy financial obligations to its creditors;

c.    as an officer and director of A-1, authorizing the continued payment of excessive salaries to A-1's shareholder/directors, including without limitation the continued payment of salaries to Suresh, Om and Kumar during time periods when they were not providing services to A-1 and A-1 could not satisfy financial obligations to its creditors;

d.    accepting an excessive salary from A-1 at a time when he was not providing services to A-1 and/or while A-1 could not satisfy financial obligations to its creditors;

e.    using $15 million of A-1's funds to purchase Sudhir Chopra's interest in Alliance for himself, at a time when A-1 could not satisfy financial obligations to its creditors, and subsequently causing this debt to be forgiven;

f.    usurping and attempting to usurp A-1's corporate opportunities for himself and his company Alliance;

g.    on information and belief, diverting A-1's assets to companies in England and India, at a time when A-1 could not satisfy financial obligations to its creditors;

h.    on information and belief, using A-1's funds to purchase personal residences; and

i.      as an officer and director of A-1, aiding and abetting the other shareholders, directors and officers of A-1 in breaching their fiduciary duties to A-1's creditors, and allowing and failing to act to prevent them from doing so

132.    Om Khosla breached his fiduciary duties by, *inter alia*:

a.      as an officer and director of A-1, authorizing A-1 to enter into, and on his own behalf entering into confidential settlement agreements in 2015 to resolve the Bucks County Action, the New Jersey Action, and the Alliance Action, which relieved or reduced Suresh's and Kumar's obligations to A-1, while requiring A-1 to make large settlement payments to its shareholders and related parties, including $10 million to Om, $1.5 million to Leena, and $35.6 million to Alliance, and to give its shareholders Om and Leena and related party Alliance priority security interests in A-1's assets, in amounts which exceeded A-1's current total assets, at a time when A-1 could not satisfy financial obligations to its creditors;

b.      approving for himself and the other shareholders, and taking for himself, shareholder distributions from A-1, at a time when A-1 could not satisfy financial obligations to its creditors;

c.      as an officer and director of A-1, authorizing the continued payment of excessive salaries to A-1's shareholder/directors, including without limitation the continued payment of salaries to Suresh, Om and Kumar during time periods when they were not providing services to A-1 and A-1 could not satisfy financial obligations to its creditors;

d.      accepting an excessive salary from A-1 at a time when he was not providing services to A-1 and/or while A-1 could not satisfy financial obligations to its creditors;

e.      as an officer and director of A-1, authorizing A-1 to pay $15 million to Sudhir Chopra so that Kumar could purchase Chopra's interest in Alliance for himself, at a time

when A-1 could not satisfy financial obligations to its creditors, and subsequently forgiving this debt;

   f.  as an officer and director of A-1, aiding and abetting the other shareholders, directors and officers of A-1 in breaching their fiduciary duties to A-1's creditors, and allowing and failing to act to prevent them from doing so.

  133.  Leena Khosla breached her fiduciary duties by, *inter alia*:

   a.  as an officer and director of A-1, authorizing A-1 to enter into, and on her own behalf entering into confidential settlement agreements in 2015 to resolve the Bucks County Action, the New Jersey Action, and the Alliance Action, which relieved or reduced Suresh's and Kumar's obligations to A-1, while requiring A-1 to make large settlement payments to its shareholders and related parties, including $10 million to Om, $1.5 million to Leena, and $35.6 million to Alliance, and to give its shareholders Om and Leena and related party Alliance priority security interests in A-1's assets, in amounts which exceeded A-1's current total assets, at a time when A-1 could not satisfy financial obligations to its creditors;

   b.  approving for herself and the other shareholders, and taking for herself, shareholder distributions from A-1, at a time when A-1 could not satisfy financial obligations to its creditors; and

   c.  as an officer and director of A-1, authorizing the continued payment of excessive salaries to A-1's shareholder/directors, including without limitation the continued payment of salaries to Suresh, Om and Kumar during time periods when they were not providing services to A-1 and A-1 could not satisfy financial obligations to its creditors;

   d.  accepting an excessive salary from A-1 at a time when A-1 could not satisfy financial obligations to its creditors;

e.      as an officer and director of A-1, authorizing A-1 to pay $15 million to Sudhir Chopra so that Kumar could purchase Chopra's interest in Alliance for himself, at a time when A-1 could not satisfy financial obligations to its creditors, and subsequently forgiving this debt;

f.      as an officer and director of A-1, aiding and abetting the other shareholders, directors and officers of A-1 in breaching their fiduciary duties to A-1's creditors, and allowing and failing to act to prevent them from doing so.

134.    Rajesh Seth breached his fiduciary duties as an officer and director of A-1 by failing to take action to place A-1 in bankruptcy, approving A-1's payment of unearned and excessive salary to shareholders, and aiding and abetting the shareholder/directors and other officers of A-1 in breaching their fiduciary duties to A-1's creditors, and allowing and failing to act to prevent them from doing so as an officer of A-1.

135.    Michael O'Hayer breached his fiduciary duties as an officer of A-1, by entering into confidential settlement agreements as an officer of A-1, to resolve the Bucks County Action, the New Jersey Action, and the Alliance Action, which relieved or reduced Suresh's and Kumar's obligations to A-1, while requiring A-1 to make large settlement payments to its shareholders and related parties, including $10 million to Om, $1.5 million to Leena, and $35.6 million to Alliance, and to give its shareholders Om and Leena and related party Alliance priority security interests in A-1's assets, in amounts which exceeded A-1's current total assets, at a time when A-1 could not satisfy financial obligations to its creditors.

136.    Suresh, Kumar, Om, and Leena breached their fiduciary duties to the Implats Companies by failing and refusing to authorize A-1 to file for voluntary bankruptcy when it became insolvent, and instead using their status as insiders of A-1 to obtain preferential and

otherwise unlawful payments, security interests and other consideration from A-1 for Suresh, Kumar, Om and Leena to the detriment of A-1's legitimate creditors, including the Implats Companies.

137. Defendants' breaches of their fiduciary duties to the Implats Companies caused damages and losses to those Companies.

138. Defendants' breaches of their fiduciary duties to the Implats Companies constituted self-dealing.

139. The breaches of fiduciary duties by Suresh, Kumar, Om and Leena were done intentionally for the purpose of converting the assets of A-1 for their personal gain and to cause A-1 to evade its obligations to its legitimate creditors, including the Implats Companies, and were outrageous, willful, and recklessly indifferent to the rights of A-1's creditors.

WHEREFORE, plaintiffs Impala Platinum Holdings Limited and Impala Refining Services Limited request that:

a. Judgment be entered against Suresh Khosla, Ashok Kumar Khosla, Om P. Khosla, and Leena Khosla, jointly and severally, requiring them to account for and restore to A-1 all of the assets of A-1 that have been distributed to them or for their benefit since A-1 became insolvent, including forgiveness of debt to A-1, with interest;

b. Judgment be entered against Ashok Kumar Khosla for damages to A-1 resulting from his usurpation of A-1's business opportunities for Alliance;

c. Judgment be entered against Rajesh Seth for damages to A-1 resulting from the foregoing acts in which he participated as the sole or co-CEO of A-1 and/or as a director of A-1, in the amount of damages to A-1 and its legitimate creditors as a result of A-1 not being placed in bankruptcy;

   d.  Judgment be entered against Michael O'Hayer for damages to A-1 resulting from the foregoing acts in which he participated as an officer of A-1, in the amount of damages to A-1 and its legitimate creditors resulting from A-1 entering into the May 2015 and September 2015 settlement agreements;

   e.  The funds restored to A-1 be applied to the payment of A-1's legitimate creditors, including plaintiffs;

   f.  The Court award punitive damages to plaintiffs and against Suresh, Kumar, Om and Leena for their outrageous, reckless and willful conduct; and

   g.  The Court award plaintiffs attorneys' fees and expenses to date and going forward, pre-judgment interest, costs and such other relief as this Court may deem just.

### COUNT FOUR – CONVERSION

### (Against Suresh Khosla, Ashok Kumar Khosla, Om Khosla, Leena Khosla, and Alliance Industries Limited)

140.  The paragraphs above, including without limitation paragraphs 118-126, are incorporated as though fully set forth herein.

141.  Conversion is the deprivation of another's right of property in, or the use or possession of a chattel, or other interference therewith, without the owner's consent and without lawful justification.

142.  Under Pennsylvania law, money may be the subject of a conversion claim.

143.  By authorizing or causing A-1 to make and grant the fraudulent transfers, settlement agreements, security interests and promissory notes set forth in paragraphs 46, 55, 61, 66-67, 78-91, 104-109 and 130-133 above, Suresh, Kumar, Om, Leena and Alliance converted the property of A-1 to their personal benefit and to the detriment of A-1's creditors, including the Implats Companies.

144.    Alliance, with full knowledge of the unlawful conversion of A-1's assets, participated therein and received payments as part of the conversion of assets, both for itself and as the alter ego of Kumar.

145.    Shareholders, officers and directors of a closely-held corporation, with knowledge of the corporation's insolvency, do not have power to approve the transfer or impairment of the corporation's assets to the detriment of the corporation's creditors.

146.    Suresh, Kumar, Om, and Leena did not have the power to consent to the conversion of A-1's property for the further reason of their conflicts of interest.

147.    Alliance did not have the power to consent to the conversion of A-1's property, and knew that the shareholder/directors could not consent thereto.

148.    The conversion of A-1's property was without lawful justification.

WHEREFORE, plaintiffs Impala Platinum Holdings Limited and Impala Refining Services Limited request that:

a.    Judgment be entered against Suresh Khosla, Ashok Kumar Khosla, Om P. Khosla, Leena Khosla, and Alliance Industries Limited, jointly and severally, requiring them to account for and restore to A-1 all of the assets of A-1 that have been distributed to them or for their benefit since A-1 became insolvent, with interest;

b.    The Court require that all of the assets of A-1 so accounted for and restored to A-1 be applied to A-1's obligations to its legitimate creditors, in the manner prescribed by law;

c.    The Court award punitive damages to plaintiffs and against defendants for their outrageous, reckless and willful conduct; and

d.    The Court award plaintiffs pre-judgment interest, costs and such other relief as this Court may deem just.

## COUNT FIVE – AIDING AND ABETTING

**(Against Suresh Khosla, Ashok Kumar Khosla, Om Khosla, Leena Khosla, Alliance Industries Limited, Michael O'Hayer, and Rajesh Seth)**

149.    The paragraphs above, including without limitation paragraphs 118-126, are incorporated as though fully set forth herein.

150.    Under Pennsylvania law, the elements of a claim for aiding and abetting the breach of a fiduciary duty are: (1) a breach of a fiduciary duty owed to another, (2) knowledge of the breach by the aider or abettor, and (3) substantial assistance or encouragement by the aider or abettor in effecting that breach.

151.    Under Pennsylvania law, the elements of a claim for aiding and abetting conversion are (1) a conversion, (2) knowledge of the conversion by the aider or abettor, and (3) substantial assistance or encouragement by the aider or abettor in effecting that conversion.

152.    Suresh, Kumar, Om and Leena breached their fiduciary duties by, *inter alia*, entering into settlement agreements that provided for large payments and granted security interests to A-1's insiders after A-1 had become insolvent.

153.    Suresh, Kumar, Om and Leena converted the property of A-1 by, *inter alia*, authorizing or causing A-1 to make and grant the fraudulent transfers, settlement agreements, security interests and promissory notes set forth above.

154.    Suresh, Kumar, Om and Leena each had knowledge of the others' breaches of fiduciary duty, as set forth in detail in Count Three, *supra*, and each provided substantial assistance or encouragement in affecting said breaches by authorizing A-1 to enter into the settlement agreements, to grant the security interests, to pay the excessive salaries and to make the shareholder distributions when A-1 was insolvent, as set forth in detail in Count Three.

155.    Suresh, Kumar, Om and Leena each had knowledge of the others' conversions of the property of A-1, as set forth in detail in Count Four, *supra*, and each provided substantial assistance or encouragement in affecting said conversions by authorizing or causing A-1 to make and grant the fraudulent transfers, settlement agreements, security interests and promissory notes set forth in paragraphs 46, 55, 61, 66-67, 78-91, 104-109, and 130-133 above,

156.    Alliance, as a party to the September 2015 confidential settlement agreement and as a company wholly owned and controlled by Kumar, had knowledge of A-1's directors' and officers' breaches of their fiduciary duties.

157.    Alliance substantially assisted A-1's directors' and officers' breaches of their fiduciary duties to the Implats Companies by assisting them in taking the assets of A-1, knowing that A-1 was insolvent.

158.    Alliance, as a party to the confidential settlement agreements and a company wholly owned by Kumar, had knowledge of, and substantially assisted in, A-1's officers' conversion of A-1's property.

159.    O'Hayer, as the officer of A-1 who signed the confidential settlement agreements, and the related security agreements and promissory notes, on behalf of A-1, had knowledge of A-1's directors' and officers' breaches of their fiduciary duties.

160.    O'Hayer had knowledge of, and substantially assisted in, the conversion of A-1's property by Suresh, Kumar, Om, Leena and Alliance, and substantially assisted A-1's directors' and officers' breaches of their fiduciary duties by becoming an officer of A-1 on May 29, 2015 and signing the confidential settlement agreements and the related security agreements and promissory notes on behalf of A-1, on that date and in September 2015.

161.   Seth, who resigned as the CEO of A-1 the day before A-1 entered into the May 29, 2015 confidential settlement agreement, and who returned to his position as the co-CEO of A-1 the next business day after A-1 entered into the September 15, 2015 confidential settlement agreement, had knowledge of A-1's directors' and officers' breaches of their fiduciary duties.

162.   Seth had knowledge of, and substantially assisted in, the conversion of A-1's property by Suresh, Kumar, Om, Leena and Alliance, and substantially assisted A-1's directors' and officers' breaches of their fiduciary duties as CEO or co-CEO, *inter alia*, by approving or allowing A-1 to make the periodic payments to Om, Leena and Alliance provided for under the confidential settlement agreements, and by making improper and excessive payments of salary to the shareholder/directors, and subsequently, as a director of A-1, by failing to take the necessary actions to have A-1 placed in bankruptcy.

WHEREFORE, plaintiffs Impala Platinum Holdings Limited and Impala Refining Services Limited request that:

a.     Judgment be entered against Suresh Khosla, Ashok Kumar Khosla, Om P. Khosla, Leena Khosla, and Alliance Industries Limited, jointly and severally, requiring them to account for and restore all of the assets of A-1 that have been distributed to them or for their benefit as a result of their breaches of fiduciary duty and/or their conversion of the assets of A-1;

b.     Judgment be entered against Rajesh Seth for the damages resulting to A-1 and its legitimate creditors for the acts set forth in this Complaint in which he participated as the sole CEO or co-CEO of A-1, and/or as a director of A-1;

c.     Judgment be entered against Michael O'Hayer for the damages resulting to A-1 and its legitimate creditors as a result of A-1 entering into the settlement agreements with its shareholder/directors and with Alliance, and the agreements related thereto;

d.    The Court require that all of the assets of A-1 so accounted for and restored to A-1 be applied to A-1's obligations to its legitimate creditors, in the manner prescribed by law;

e.    The Court award punitive damages to plaintiffs and against Suresh, Kumar, Om and Leena for their outrageous, reckless and willful conduct; and

f.    The Court award plaintiffs pre-judgment interest, costs and such other relief as this Court may deem just.

## COUNT SIX – RICO, 18 U.S.C. § 1961 et seq.

### (Against Suresh Khosla, Ashok Kumar Khosla, Om Khosla, Leena Khosla, and Alliance Industries Limited)

163.    The paragraphs above are incorporated as though fully set forth herein.

164.    At all relevant times, plaintiffs Impala Platinum Holdings Limited and Impala Refining Services Limited were "persons" within the meaning of 18 U.S.C. §§ 1961(3) and 1964(c).

165.    At all relevant times, defendants Kumar, Suresh, Om, Leena, and Alliance were "persons" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c) and (d).

166.    At all relevant times, A-1 was an "enterprise" within the meaning of 18 U.S.C. § 1961(4).

167.    At all relevant times, A-1 engaged in interstate and/or foreign commerce, and its activities affected interstate and/or foreign commerce.

168.    At all relevant times, Kumar, Suresh, Om, Leena and Alliance were employed by and/or associated with A-1.

169.    Kumar, Suresh, Om, Leena, and Alliance conducted or participated, directly or indirectly, in the conduct of A-1's affairs through a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(1) and (5).

170.    Pursuant to and in furtherance of their fraudulent scheme and conspiracy, as set forth in this Amended Complaint, defendants used the mail or wire as follows:

a.    Om, Leena, Kumar, Suresh, and A-1 entered in a Confidential Settlement Agreement and Mutual General Release to resolve the Bucks County Action dated as of May 29, 2015.  On June 2, 2015, counsel for Leena and Suresh used electronic mail to forward to Suresh, and to counsel for Kumar and A-1, a revision to page 14, paragraph 18 of the Agreement.

b.    On June 1, 2015, Om recorded the security interest in all of A-1's assets that A-1 gave him in the May 2015 settlement agreement by filing a UCC-1 statement with the Secretary of State/UCC Division in Harrisburg, Pennsylvania.  On information and belief, Om used the mail or a private carrier like Federal Express or UPS to deliver the UCC-1 statement to the filing office, and the filing office used the mail to return a copy of the filed statement to Om.

c.    Om, Leena and Alliance entered into a Subordination Agreement dated as of September 15, 2015, pursuant to which they agreed that the payment of the Second Priority Debt to Leena and the Third Priority Debt to Alliance would be subordinate to and subject to the payment in full of the First Priority Debt to Om, as set forth in that agreement, and that the payment of the Third Priority Debt to Alliance would be subordinate to and subject to the payment in full of the Second Priority Debt to Leena, as set forth in that agreement.  The Subordination Agreement was signed in counterparts by Om, Leena, and Kumar (on behalf of Alliance), and acknowledged in counterpart by O'Hayer (on behalf of A-1).  The counterpart signature pages appear to have each been printed from different printers, and Alliance's signature is dated October 16, 2015.  On information and belief, Om, Leena, Alliance and A-1 used the mail and/or wire to exchange copies of the Subordination Agreement and the counterpart signature pages.

      d.      A-1 issued a Promissory Note to Alliance dated as of September 15, 2015, for the payment of $10 million plus interest, commencing on November 5, 2015. The Promissory Note expressly provided "All payments due hereunder shall be made to Holder in immediately available funds by wire transfer to an account designated by Holder as shall be directed by Holder."

      e.      On September 16, 2015, A-1 and Alliance, through their respective counsel, electronically filed a Stipulation for Entry of Judgment in the Alliance Action in favor of Alliance Limited against A-1 in the amount of $20,000,000.

      f.      On November 5, 2015, Leena recorded the security interest in all of A-1's assets that A-1 gave her in the September 2015 settlement agreement by filing a UCC-1 statement with the Secretary of State/UCC Division in Harrisburg, Pennsylvania. On information and belief, Leena used the mail or a private carrier like Federal Express or UPS to deliver the UCC-1 statement to the filing office, and the filing office used the mail to return a copy of the filed statement to Leena.

      g.      On information and belief, on November 16, 2015, A-1 wired $55,833.33 to Alliance, pursuant to the terms of the $10 Million Promissory Note.

      h.      On information and belief, on December 7, 2015, A-1 wired $55,758.33 to Alliance, pursuant to the terms of the $10 Million Promissory Note.

      i.      On December 10, 2015, Alliance recorded the security interest in all of A-1's assets that A-1 gave Alliance in the September 2015 settlement agreement by filing a UCC-1 statement with the Secretary of State/UCC Division in Harrisburg, Pennsylvania. On information and belief, Alliance used the mail or a private carrier like Federal Express or UPS to deliver the UCC-1 statement to the filing office, and the filing office used the mail to return a copy of the filed statement to Alliance.

j.       On information and belief, on January 5, 2016, A-1 wired $55,683.33 to Alliance, pursuant to the terms of the $10 Million Promissory Note.

k.       On January 25, 2016, Alliance electronically filed a Praecipe for Writ of Execution in the Alliance Action, directing the Clerk of Court to enter the writ in the judgment index against A-1.

l.       On February 2, 2016, Alliance mailed a Notice of Events of Default and Acceleration to O'Hayer, and to Om, Leena and their respective counsel, in which Alliance declared the outstanding principal balance of the $10 million Promissory Note to be immediately due and payable in full.  In the letter, Alliance explained that,

   *i.*       under the terms of the September 15, 2015 Confidential Settlement Agreement, Alliance's $20 million judgment against A-1 became immediately enforceable when Impala moved to confirm the Arbitration Award against A-1,

   *ii.*       pursuant to its rights under that Agreement, Alliance had caused the Court to issue a Writ of Execution with respect to the $20 million judgment, and

   *iii.*       as a result, A-1 has become insolvent, making the outstanding principal balance under the $10 million Note immediately due and payable in full

m.       On information and belief, on February 5, 2016, A-1 wired $55,608.33 to Alliance, pursuant to the terms of the $10 Million Promissory Note.

n.       On March 7, 2016, A-1 wired $55,533.33 to Alliance, pursuant to the terms of the $10 Million Promissory Note.

o.       On April 5, 2016, A-1 wired $55,458.33 to Alliance, pursuant to the terms of the $10 Million Promissory Note.

p.      On April 21, 2016, Om served a Notice of Disposition of Collateral on A-1, via Federal Express, which notified A-1 and all parties that Om as the Secured Party would conduct a scheduled sale of all personal property of A-1 on July 10, 2016.

q.      On May 5, 2016, A-1 wired $55,383.33 to Alliance, pursuant to the terms of the $10 Million Promissory Note.

r.      On May 10, 2016, Leena served a Notice of Disposition of Collateral on A-1, via U.S. Mail and UPS Overnight Delivery, which notified A-1 and all parties that Leena as the Secured Party would conduct a scheduled sale of all personal property of A-1 on July 10, 2016, following the public sale to be held by Om pursuant to his Notice of Disposition of Collateral.

171.    As detailed above, Kumar, Suresh, Om, Leena, and Alliance committed multiple acts of mail fraud in violation of 18 U.S.C. § 1341, and wire fraud in violation of 18 U.S.C. § 1343.

172.    The foregoing predicate acts constituted a pattern of racketeering activity in that they were both related and continuous.

173.    The defendants' scheme satisfies the requirement of "closed-ended" continuity, in that the scheme has already been ongoing for a substantial period of time.

174.    The defendants' scheme also satisfies the requirement of "open-ended" continuity, in that the scheme poses a threat of unlawful activity continuing into the future because, *inter alia*, defendants continue to refuse to put A-1 into voluntary bankruptcy.

175.    Moreover, to the extent that the scheme has been terminated, the defendants did not terminate their unlawful conduct voluntarily.  Instead, such conduct was terminated only as a result of the Implats Companies taking legal action, and this Court's Orders which, *inter alia*, appointed a Receiver for A-1, and prohibited further distributions of A-1's assets to the

defendants.  Without these actions by the Implats Companies and the Court, the defendants' unlawful scheme would have continued several years into the future in that:

a.      In the May 29, 2015 Confidential Settlement Agreement, A-1 agreed to pay Om $3,500,000 at the closing on May 29, 2015, plus $6,500,000 in 21 equal monthly installments of $300,000, commencing July 7, 2015, with payments due on the 5th day of each month to and including March 5, 2017, and with a final payment of $200,000 on April 5, 2017;

b.      In the May 29, 2015 Confidential Settlement Agreement, A-1 agreed to pay Leena $1,500,000 in 22 equal monthly installments of $68.181.82, commencing July 7, 2015, with payments due on the 5th day of each month, to and including April 5, 2017; and

c.      In the September 15, 2015 Confidential Settlement Agreement, A-1 agreed:

i.      To pay Alliance $5,600,000 thirty days after payment of all amounts due to Om and Leena under the May 29, 2015 Settlement agreement, or on June 4, 2017, whichever is earlier, in a lump sum payment; and

ii.      To pay Alliance $10,000,000 pursuant to the terms of a Promissory Note, which provided for the following payments:  (i) thirty-six equal monthly installments of $33,333.33 plus 2.7% interest on the principal, commencing on November 16, 2015 with payments due on the 5th day of each month to and including October 5, 2018, followed by (ii) twenty-four equal monthly installments of $41,666.67 plus 2.7% interest on the principal, commencing on November 5, 2018 with payments due on the 5th day of each months to and including October 5, 2020, followed by (iii) a lump sum payment of the unpaid principal plus 2.7% interest due on or before October 5, 2030.

d.      Accordingly, the RICO scheme and predicate acts would have continued at least until 2030 in the absence of the court proceedings brought by the Implats Companies, and the resulting Court orders.

176.     As an intended, necessary, and foreseeable consequence of the foregoing transactions, the Implats Companies were damaged and continue to be damaged in their business and property.

177.     The Implats Companies incurred substantial legal fees and costs in order to prevent the continuation of the RICO conspiracy.

178.     In violation of 18 U.S.C. § 1962(d), Kumar, Suresh, Om, Leena, and Alliance conspired to conduct or participate in the affairs of A-1 through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

WHEREFORE, plaintiffs Impala Platinum Holdings Limited and Impala Refining Services Limited request that:

a.      Judgment be entered against Suresh Khosla, Ashok Kumar Khosla, Om P. Khosla, Leena Khosla, and Alliance Industries Limited, jointly and severally, requiring them to pay compensatory damages to plaintiffs;

b.      The Court award treble damages to plaintiffs in accordance with 18 U.S.C. § 1964(c);

c.      The Court award plaintiffs costs of suit, including a reasonable attorney's fee, in accordance with 18 U.S.C. § 1964(c); and

d.      The Court award plaintiffs attorneys' fees and expenses to date and going forward, pre-judgment interest and such other relief as this Court may deem just.

## COUNT SEVEN – CIVIL CONSPIRACY

### (Against Suresh Khosla, Ashok Kumar Khosla, Om Khosla, Leena Khosla, and Alliance Industries Limited)

179.    The paragraphs above, including without limitation paragraphs 118-126, are incorporated as though fully set forth herein.

180.    Under Pennsylvania law, the elements of a claim for civil conspiracy are: (1) a combination of two or more persons acting with common purpose to do an unlawful act or to do a lawful act by unlawful means or for unlawful purpose, (2) an overt act done in pursuance of common purpose, and (3) actual legal damage.

181.    Faced with the likelihood that the Implats Companies would soon obtain a substantial arbitration award against A-1, Suresh, Kumar, Om, Leena and Alliance agreed to act with the common purpose of converting or transferring interests in all of A-1's assets to A-1's insiders and Khosla family members and their affiliated companies.

182.    Suresh, Kumar, Om, Leena and Alliance acted to effectuate their common purpose, by agreeing, *inter alia*, (1) to divide up A-1's assets between them, (2) to authorize A-1 to enter into confidential settlement agreements, including security agreements and promissory notes that granted security interests to Om, Leena and Alliance, (3) to cancel and reduce Kumar's debt to A-1, (4) to require A-1 to make payments to Om and Leena, neither of whom had asserted claims against A-1, (5) to relieve Suresh and Kumar of making payment to A-1 of the excess shareholder distributions they received, and (6) to conceal the fact and terms of said settlement agreements, security agreements and promissory notes from A-1's creditors.

183.    In addition to enriching themselves, these defendants acted with the intent and purpose of rendering A-1 judgment proof with respect to the claims of the Implats Companies against A-1.

184.    The defendants on these counts engaged in many overt acts in furtherance of this conspiracy.  The overt acts included acts in furtherance of each element of their conspiracy, including those elements set forth in paragraph 170, *supra.* The overt acts are set forth in detail in this Amended Complaint.

185.    The Implats Companies were damaged by the acts of Suresh, Kumar, Om, Leena and Alliance, because their acts made the arbitration award and judgment plaintiffs obtained against A-1 uncollectible.

WHEREFORE, plaintiffs Impala Platinum Holdings Limited and Impala Refining Services Limited request that:

a.     Judgment be entered against Suresh Khosla, Ashok Kumar Khosla, Om P. Khosla, Leena Khosla, and Alliance Industries Limited, jointly and severally, for the amount of damages incurred by A-1 as a result of the foregoing conspiracy and acts in furtherance thereof;

b.     The Court require that all of the assets of A-1 so accounted for and restored to A-1 be applied to A-1's obligations to its legitimate creditors, in the manner prescribed by law;

c.     The Court award punitive damages to plaintiffs and against Suresh, Kumar, Om and Leena for their outrageous, reckless and willful conduct; and

d.     The Court award plaintiffs pre-judgment interest, costs and such other relief as this Court may deem just.

## **COUNT EIGHT – DEEPENING INSOLVENCY**

### **(Against Suresh Khosla, Ashok Kumar Khosla, Om Khosla, Leena Khosla, Michael O'Hayer and Rajesh Seth)**

186.    The paragraphs above, including without limitation paragraphs 26-63 and 118-126, are incorporated as though fully set forth herein.

187.    At all relevant times, and not later than 2012, A-1's liabilities exceeded its assets, and A-1 could not pay its obligations to its creditors.

188.    When A-1 became insolvent, Suresh, Kumar, Om, and Leena, in their capacities as officers and directors of A-1, owed a fiduciary duty to A-1's creditors, including the Implats Companies.

189.    When Seth became an officer of A-1 in 2014, and when O'Hayer became an officer of A-1 in 2015, A-1 was already insolvent, so that Seth and O'Hayer also owed a fiduciary duty to A-1's creditors.

190.    Suresh, Kumar, Om and Leena breached their fiduciary duties to A-1's legitimate creditors, including the Implats Companies, by causing the deepening insolvency of A-1 after it became insolvent, by, *inter alia*, (1) prolonging A-1's corporate existence while A-1 was incurring heavy losses in order to enrich themselves; (2) causing A-1 to pay salaries to them in the absence of their performing services or to pay them greatly excessive salaries; (3) causing A-1 to go into additional debt and incur new financial obligations, including the settlement agreements, security interests and promissory notes A-1 gave to them and to Alliance; and (4) refusing to place A-1 in bankruptcy as a result of their conflicts of interest.

191.    Seth joined in and committed the breaches of fiduciary duty set forth in (1), (2) and (4) in the foregoing paragraph, and thereby substantially caused the deepening insolvency.

192.    O'Hayer joined in and committed the breach of fiduciary duty set forth in (3) in the foregoing paragraph, and thereby substantially caused the deepening insolvency.

193.    The fraudulent expansion of A-1's debt and the prolongation of A-1's life beyond insolvency caused damage to A-1 and its legitimate creditors.

WHEREFORE, plaintiffs Impala Platinum Holdings Limited and Impala Refining Services Limited request that:

a.     Judgment be entered against Suresh Khosla, Ashok Kumar Khosla, Om P. Khosla, Leena Khosla, Rajesh Seth and Michael O'Hayer, jointly and severally, for the losses incurred by A-1 and its creditors as a result of their foregoing actions which caused and continue to cause the deepening insolvency of A-1;

b.     The Court require that all of the assets of A-1 so accounted for and restored to A-1 be applied to A-1's obligations to its legitimate creditors, in the manner prescribed by law;

c.     The Court award punitive damages to plaintiffs and against Suresh, Kumar, Om and Leena for their outrageous, reckless and willful conduct; and

d.     The Court award plaintiffs pre-judgment interest, costs and such other relief as this Court may deem just.

## <u>COUNT NINE  – DECLARATORY JUDGMENT, 28 U.S.C. § 2201</u>

### (<u>Against All Defendants</u>)

194.   The paragraphs above are incorporated as though fully set forth herein.

195.   There is a presently-justiciable dispute between Plaintiffs and Defendants as to the matters set forth above.

196.   Plaintiffs assert this claim for a declaratory judgment pursuant to 28 U.S.C. § 2201, for the purpose of determining questions of actual controversy within the jurisdiction of the United States Courts.

197.   There is no adequate remedy at law to resolve these issues.

WHEREFORE, plaintiffs Impala Platinum Holdings Limited and Impala Refining Services Limited request a declaration that:

a.      The judgments in favor of Om, Leena and Alliance and against A-1, and A-1's grants of security interests to Om, Leena and Alliance in 2015, and Om's, Leena's and Alliance's perfections of their security interests in A-1's assets, are null and void, including, *inter alia*, all such judgments and security interests obtained or asserted in or as the result of the Alliance Action, the New Jersey Action, and the Bucks County Action;

b.      Alliance, Kumar, Om and Leena are unlawfully in receipt of the payments and other consideration they received as a result of the settlements and other agreements related to the Alliance Action, the New Jersey Action, and the Bucks County Action, and such payments and other consideration constitute debts owed by them, with interest, to A-1;

c.      Any actions taken by or on behalf of Alliance, Kumar, Om and/or Leena to enforce judgments, security interests, or other obligations against A-1, including but not limited to steps to execute on judgments or security interests, are null and void;

d.      To the extent that any judgments, promissory notes, or the like held by Alliance, Kumar, Om and/or Leena are valid, they do not have priority over any other debts or obligations of A-1, including obligations and debts owed by A-1 to its legitimate creditors, and are offset by the debts and obligations which Alliance, Kumar, Om and Leena have to A-1; and

e.      Any claims that Suresh, Kumar, Om, Leena, and/or Alliance may have against A-1 are equitably subordinated until all other claims and judgments against A-1 have been satisfied.

## DEMAND FOR JURY TRIAL

Plaintiffs demand trial by jury on all issues so triable.

Respectfully submitted,

Richard L. Bazelon, Esq.
PA ID No. 02505
Lisa A. Barton, Esq.
PA ID No. 78139
Michael F.R. Harris, Esq.
PA ID No. 56948
BAZELON LESS & FELDMAN, P.C.
One South Broad Street, Suite 1500
Philadelphia, PA 19107
Tel. (215) 568-1155

Date:   August 2, 2016

**CERTIFICATE OF SERVICE**

I hereby certify that on August 2, 2016, the Amended Complaint was served electronically on all counsel using the Court's ECF system, and is available for viewing and downloading from that system.


/s/ Lisa A. Barton
Lisa A. Barton