IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **IMPALA PLATINUM HOLDINGS LIMITED, et al.**<br><br>v.<br><br>**A-1 SPECIALIZED SERVICES AND SUPPLIES, INC., et al.** | **CIVIL ACTION**<br><br>**NO. 16-1343** |

**Baylson, J.**                                                                          **February 2, 2017**

## MEMORANDUM RE: CRIME-FRAUD EXCEPTION

At issue in this complex commercial litigation is whether to compel production of certain attorney-client privileged documents under the crime-fraud exception. Plaintiffs Impala Platinum Holdings Limited and Impala Refining Services Limited ("Impala") filed a Motion to Require the Shareholder/Director Defendants to Produce Privilege Logs and to Produce Certain Communications Based on the Crime-Fraud Exception on November 11, 2016 (ECF No. 150). After considering the Motion, as well as the responses and reply thereto, this Court scheduled a hearing on January 12, 2017 for argument on whether *in camera* review of the privileged documents was appropriate. At the hearing, defense counsel argued that Impala had not met its burden of showing a prima facie case of fraud sufficient to justify *in camera* review of the challenged documents. They further contended that a fraudulent conveyance, such as that alleged by Impala, cannot constitute "fraud" for purposes of the crime-fraud exception. Impala, on the other hand, argued that they had met the Third Circuit's standard for *in camera* review under the crime-fraud exception, and cited a recent Supreme Court case to bolster their argument that a fraudulent conveyance can be a "fraud" under the exception.

Following the hearing, the Court ordered the Defendants to prepare a log of all attorney-client communications from the client to counsel in the six months prior to each of the allegedly

1

fraudulent transactions (ECF No. 205).  The Court found that because the evidence showed that Defendant A-1 Specialized Services and Supplies, Inc. ("A-1") had engaged in significant financial transactions at a time when it may have been insolvent and when Defendants may have known Impala to have a superior right of recovery, *in camera* review was justified.  Defendants submitted their privilege logs and all communications described therein on January 24, 2017, with the exception of Ashok Kumar Khosla and Alliance Industries Limited ("Alliance"), who requested a phone call to discuss the time and expense associated with producing every logged document.  The Court agreed that requiring Alliance to produce upwards of 20,000 pages of documents was unnecessary at that juncture, and a compromise was reached whereby Alliance and Impala would each select one month of documents for the Court to review.  After this first step, the Court would determine whether further review was necessary.

      Alliance submitted 578 emails to the Court, from the months of May and June 2015.  The vast majority of the communications were innocuous discussion of litigation filings, scheduling, and strategy.  In a few instances, the documents showed the clients asking counsel for legal advice regarding the consequences of the proposed settlements, or of A-1 filing for bankruptcy.  But, contrary to Impala's position, we do not find that documents of this sort are sufficient to meet the stringent standard for piercing the attorney-client privilege.

      The Third Circuit has established that to pierce the attorney-client privilege under the crime-fraud exception, the court must find that the movant has demonstrated there is a reasonable basis that "(1) the client was committing or intending to commit a fraud or crime, and (2) the attorney-client communications were in furtherance of that alleged crime or fraud."  In re Grand Jury Subp., 705 F.3d 133, 151, 153 (3d Cir. 2012).  "The reasonable basis standard is intended to be reasonably demanding; neither speculation nor evidence that shows only a distant

2

likelihood of corruption is enough." Id. at 153 (quoting In re Grand Jury Proceedings, 417 F.3d at 23). "Only when a client knowingly seeks legal counsel to further a continuing or future crime does the crime-fraud exception apply." United States v. Doe, 429 F.3d 450, 454 (3d Cir. 2005). In addition, before compelling production of the privileged documents, the court must hold an evidentiary hearing at which "the party defending the privilege [is] given the opportunity to be heard, by evidence and argument." Haines v. Liggett Group Inc., 975 F.2d 81, 97 (3d Cir. 1992).

      We have found no precedent for piercing the attorney-client privilege under circumstances similar to these, where there is no evidence of intent to defraud or commit a crime. In Alliance's letter dated January 25, 2017, there are citations to several cases that show the stringent standard courts apply before compelling production of privileged documents under the crime-fraud exception. Most factually similar to the instant case is Tindall v. H & S Homes, LLC, 757 F. Supp. 2d 1339 (M.D. Ga. 2011), in which the communications at issue were likewise alleged to be in furtherance of fraudulent transfers. The court engaged in an *in camera* review and concluded that the plaintiff had satisfied his burden of showing the exception was applicable to communications relating to one of the three challenged transfers. That finding was largely based on the court's review of one damning document, which laid out a scheme by the defendants' attorney to "form[] a completely new entity . . . designed to avoid claims of successor liability to the maximum extent possible." Id. at 1363. There is no evidence in this case that shows any comparable level of fraudulent intent on the part of Defendants or their counsel. In addition, in Kickflip, Inc. v. Facebook, Inc., No. 12-1369, 2016 WL 5929003 (D. Del. Oct. 11, 2016), the court compelled production of two documents under the crime-fraud exception because they reflected misrepresentations by the plaintiff to counsel regarding the creation of an agreement which the court had already found was likely to have been backdated.

3

See id. at *6.

The cases cited by Impala in their letter dated January 25, 2017, on the other hand, are factually inapposite. In In re Rosich, 561 B.R. 668 (Bank. W.D. Mich., 2016), there was far greater indicia of fraud than is present in the instant case, insofar as the defendants in Rosich conceded that the transfer at issue had occurred "at least in part to limit the number of creditors who could reach [the asset at issue]." Id. at 669. Similarly, in Fragin v. First Fund Holdings LLC, 2016 WL 4256984 (Sup. Ct. N.Y. Cty. Aug. 11, 2016), the court concluded that the plaintiff had shown fraud sufficient for the exception's application based on significant evidence of a fraudulent transfer, including the fact that the same law firm advised both parties to the challenged transaction. There is simply not a comparable level of fraud shown by the documents reviewed.

We also note the recently published precedential Third Circuit decision of In re Grand Jury Matter # 3, No. 15-2475, 2017 WL 383361 (3d Cir. Jan. 27, 2017), that considers this issue and finds that the district court erred in finding the crime-fraud exception applicable. In that case, an attorney had sent an email to his client explaining how to fraudulently amend his tax returns, and the client had forwarded the email to his accountant. Id. at *2. The court concluded that a reasonable basis existed to believe the client had committed fraud, based on that email and other evidence, but held that there was insufficient evidence to show the client had followed through on the lawyer's advice and amended the returns. Id. at *6-7. Because the "in furtherance" element of the crime-fraud exception test was absent, the exception could not apply to pierce the privilege. We read this opinion as another example of the Third Circuit embracing a strict test for invading the attorney-client privilege, and find that it bolsters our conclusion that Impala has failed to meet its burden to show that the crime-fraud exception applies.

4

Based on the foregoing, we find that further sampling of documents by date is not a worthwhile exercise. To the extent Impala requests the Court to conduct additional *in camera* review, we will allow the searching of terms suggested by Impala but order that the costs of any such additional searching and production be borne by Impala.

BY THE COURT:

/s/ Michael M. Baylson
MICHAEL M. BAYLSON
United States District Court Judge

O:\Cecily.2016\Impala v. A-1 (16-1343)\Memo re Crime Fraud Exception - to file.docx